**PAYNE, Secretary of the Interior, v. UNITED STATES ex rel. OLSON.**

(Court of Appeals of District of Columbia. Submitted October 5, 1920. Decided November 8, 1920.)

No. 3376.

1. **Public lands** ⊛=98—**Secretary has legal discretion as to approval of entries.**

Under the statute requiring the Secretary of the Interior to approve public land entries before patent, the approval of the secretary is not a mere form; but he has a legal discretion to withhold such approval to prevent injustice under the particular circumstances of the case.

2. **Public lands** ⊛=108—**Decision land was not vacant held within Secretary's discretion.**

Where a coal company, under authority from the state, which it believed with good reason had title to the land, erected valuable improvements thereon and was operating its mine on such land when the tifle of the state thereto was *held* invalid, a decision by the Secretary of the Interior that the land was not vacant land, within Rev. St. § 2347 (Comp. St. § 4659), authorizing entry on vacant coal lands, was within his discretion and not subject to control by the courts.

3. **Mandamus** ⊛=15—**Not issued to work injustice.**

Though mandamus is classed as a legal remedy, its issuance is largely controlled by equitable principles, and it is granted as a matter of grace, not of right, and therefore is never issued, where it would further a wrong or cause an injustice.

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the United States, on relation of William F. Olson, against John Barton Payne, Secretary of the Interior. Judgment for relator, and respondent appeals. Reversed and remanded.

C. E. Wright and C. D. Mahaffie, both of Washington, D. C., for appellant.

Samuel Herrick, of Washington, D. C. (Culbert L. Olson, of Salt Lake City, Utah, on the brief), for appellee.

SMYTH, Chief Justice. The Secretary of the Interior appeals from a judgment of the Supreme Court of the District awarding the relator a mandamus commanding the Secretary to allow the entry of the relator of certain coal land and to give to him in due course a patent for the land. A rule to show cause was issued. To this the Secretary filed a return and answer. A demurrer by the relator was sustained, and judgment followed.

According to the record the following are admitted facts: The state of Utah, under its school land grant of July 16, 1894 (28 Stat. 107), apparently became the owner of a certain section 16 of which the land in controversy is a part. This section has a coal deposit, but the act contained no inhibition against passage of title to mineral lands. Up to January 28, 1918, Utah, taking the language of the act literally, claimed that it was entitled to the land, irrespective of whether or not it contained coal. On that date, however, the Supreme Court of the United States decided that this grant did not give title to coal land.

⊛=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Some time prior to December 8, 1913, but while the state was asserting its right to the land, Spring Canyon Coal Company, owner and operator of coal mines adjacent to section 16, erected on the southwest part of the N. W.¼ N. E.¼ of the section, pursuant to authority procured from the state, certain improvements embracing a power house, tipple, tramway, and other structures, valued at about $90,000. After their erection, and with full knowledge of their existence and location, the relator, on December 8, 1913, applied to the proper United States land officer to enter and purchase, under the coal land laws of the United States, the quarter section on which the improvements stood and paid to the receiver the appraised value, to wit, $45 the acre. No certificate, as provided by the regulations governing the disposition of coal lands, has ever been issued to him. In due time Utah filed a protest against his application, alleging that title to the land had vested in it absolutely under its grant, and that the Commissioner of the General Land Office in another proceeding involving a coal land filing had decided that the state under its grant took title to coal lands. The local land officials rejected the state's theory and held its protest for dismissal. From this action the state appealed to the Commissioner of the General Land Office.

At this time the case of United States v. Sweet, involving a similar question, was pending in court. The lower court held against the state in that case, but the Circuit Court of Appeals for the Eighth Circuit (228 Fed. 421, 143 C. C. A. 3), in an opinion by Judge Sanborn, reversed the decision and held that the state's title to the land was valid. This decision was in turn reversed by the Supreme Court of the United States. United States v. Sweet, 245 U. S. 563, 38 Sup. Ct. 193, 62 L. Ed. 473. Thereupon the state's appeal to the Commissioner of the General Land Office, which had been permitted to rest pending the decision in the Sweet Case, was taken up and disposed of in accordance with that decision. But the Commissioner further held that, inasmuch as the coal content of section 16 was confined to a tract of about 5 acres in the northeast corner of the quarter section entered by the relator, and the coal company, under color of title from the state and in good faith, had made valuable improvements on a part of the quarter section which contained no coal, the last-named part should be segregated from the other, and the relator permitted to perfect entry for the residue. Upon appeal to the Secretary this decision was affirmed, except the part providing for segregation. The Secretary held that, instead of segregation, the state, if it chose, might, under the act of Congress approved April 30, 1912 (37 Stat. 105 [Comp. St. § 4669]), select the surface of the land, with reservation to the United States of coal deposits, in harmony with the act of June 22, 1910 (36 Stat. 583 [Comp. St. §§ 4666–4668]), and that the coal deposits and mining rights should go to the relator, if he desired to accept them.

Summarized, the facts show that the state believed that it had title to the land in controversy. That this belief was not entirely baseless is evidenced, first, by the holding of the Commissioner of the General Land Office; and, second, by the decision of the Circuit Court

of Appeals for the Eighth Circuit in the Sweet Case. The coal company procured from the state the right to use a part of the land, and, relying on the state's title and acting in good faith, erected on the land extensive structures at a cost of about $90,000. If the relator's contentions are sustained, he will acquire title to those structures without paying a penny therefor, or else they must be removed. He, with the full knowledge of the state's claim, of the coal company's reliance on it, of the improvements made by the company, and their value, entered the land. By the Secretary's decision he is given an opportunity to secure all the land containing coal, as well as every facility for its removal. Thus the substantial rights of the relator, together with those of the coal company, are preserved. Was it within the Secretary's discretion to do this, or was he without choice in the situation, and compelled, no matter how unjust the consequence might be, to approve relator's entry and pass it for patent?

[1] It seems to us that the solution of the problem is not difficult. The statute requires the Secretary to approve the entry before a patent can emerge. His approval is not a mere idle ceremony. True, the statute does not give to him arbitrary discretion; but it does give him power to prevent such an injustice as is sought to be accomplished by the relator in this proceeding. Speaking of a like situation the Supreme Court of the United States said:

"We would not be misunderstood in respect to this matter. We do not mean to imply that any arbitrary discretion is vested in the Secretary; but we hold that the statute requiring approval by the Secretary of the Interior was intended to vest a discretion in him by which wrongs like this could be righted, and equitable considerations, so significant and impressive as this, given full force. It is obvious, it is common knowledge, that in the administration of such large and varied interests as are intrusted to the Land Department, matters not foreseen, equities not anticipated, and which are therefore not provided for by express statute, may sometimes arise, and therefore that the Secretary of the Interior is given that superintending and supervising power which will enable him, in the face of these unexpected contingencies, to do justice." Williams v. United States, 138 U. S. 514, 524, 11 Sup. Ct. 457, 461 (34 L. Ed. 1026).

To the same purport is the language of Mr. Justice Van Devanter in the recent case of Northern Pacific Railroad Co. v. McComas, 250 U. S. 387, 393, 39 Sup. Ct. 546, 548 (63 L. Ed. 1049). He said:

"The approval or disapproval by the Secretary of the Interior of such lieu selections is not merely a formal act. It involves an exercise of sound, but not arbitrary, discretion, and makes it admissible for him, where a selection is proffered for land which a bona fide occupant, misinformed and misunderstanding his rights, has reclaimed and improved at large cost, to reject the selection and hold the title in the United States until, as this court has said 'within the limits of existing law or by special act of Congress,' the occupant may be enabled to obtain title from the United States."

The Williams Case is cited by him and approved. Does not that language fit this case? Did not the coal company, acting in good faith, but misinformed and misunderstanding its rights, improve a portion of the land in question at large cost? And if in the McComas Case the Secretary was justified in treating the matter from an equitable standpoint, why was there not authority for his doing the same

thing in the case we are considering? He may have made a mistake in his solution of the problem, but that he acted within the radius of a sound discretion, not arbitrarily, is, in our judgment, beyond doubt. We have no power to direct the course of that discretion.

[2] Moreover, he was called upon to determine whether or not the land was open to entry at the time the relator entered it. Section 2347 of the Revised Statutes (Comp. St. § 4659) provides:

"Every person above the age of twenty-one years" shall "have the right to enter, * * * any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority," etc.

Was this land vacant at the time the relator entered it? We have seen that the coal company had its structures on it under a claim of right. What is meant by vacant lands is construed in Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 Fed. 4, 13, 50 C. C. A. 79, 89 (61 L. R. A. 230) where it is ruled that "vacant lands are such as are absolutely free, unclaimed, and unoccupied." While we do not decide the land was vacant within the meaning of the statute, because it is not our province to do so in this proceeding, we are firmly of the opinion that a decision by the Secretary that it was not would be entirely within his discretion and not subject to our control. If not vacant, then the relator had no right to enter it.

[3] Besides, the Secretary held, and there is reason for his holding, that to grant what relator demanded would work an injustice. It is well settled that mandamus is never issued where it would be likely to further a wrong or cause an injustice. Courts grant it as a matter of grace, not of right.

"It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit. Although classed as a legal remedy, its issuance is largely controlled by equitable principles." Duncan Townsite Co. v. Lane, 245 U. S. 308, 311, 38 Sup. Ct. 99, 101 (62 L. Ed. 309); United States ex rel. Stevens v. Richards, 33 App. D. C. 410; United States ex rel. Laws v. Davenport, 34 App. D. C. 502; United States ex rel. McManus v. Fisher, 39 App. D. C. 176; United States ex rel. Prettybull v. Lane, 47 App. D. C. 134.

We are satisfied that the Secretary was not acting arbitrarily, but was exerting a sound discretion—was proceeding in the light of equitable considerations—in the action he took, and therefore that the court below fell into error in directing the issuance of the writ.

The judgment is reversed, at the cost of the appellee, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.