**BALLOU v. KEMP.**

No. 6888.

United States Court of Appeals for the District of Columbia.

Decided Aug. 9, 1937.

Elwood H. Seal, Corporation Counsel, and Vernon E. West, Assistant Corporation Counsel, for appellant.

Robert E. Lynch, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

In this case the appellee, Lois Kemp, an infant who sues through her father and guardian John S. Kemp, seeks the issuance of a writ of mandamus against the appellant Frank W. Ballou, Superintendent of Schools in the District of Columbia, to compel him to admit her as a pupil in the public schools of the District and to compel him to direct that she be taught free of tuition.

The case arose as follows: John S. Kemp and his daughter are both residents of the County of Arlington in the State of Virginia, but John S. Kemp is employed in the District by the United States government. Upon the opening of the session of the public schools in the District in September 1936, Mr. Kemp presented his daughter for registration and admission as a pupil in the Gordon Junior High School, one of the public schools in the District. The principal of that school, acting under the direction of the appellant, denied the daughter admission to the Gordon Junior High School or to any of the public schools in the District. She then commenced this action in the District Court of the United States for the District of Columbia. She alleged in her petition for a writ of mandamus the facts above set forth, and she founded her asserted right to the writ upon D.C.Code 1929, tit. 7, § 163, 38 Stat. 910, which provides that:

"All pupils whose parents are employed officially or otherwise in the District of Columbia shall be admitted and taught free of charge in the schools of said District."

The appellant answered the petition. In his answer he admitted the facts pleaded by the appellee and admitted the existence of the statute quoted, but he denied that he had failed to comply with the statute. In further defense, he alleged in his answer that: At the time of the appellee's application for admission to the public schools of the District of Columbia in September 1936, she had completed the sixth grade of such schools and therefore, if entitled to enrollment at all, would be entitled to enrollment in the seventh grade, which is in the junior high schools. Congestion existed in many of the elementary public schools of the District, but especially in the junior high schools. This congestion was the result of a large and unanticipated increase in the population of the District during a period of years preceding the school year for which the appellee sought admission, 1936–37. This increase in population caused a sub-

stantial increase in the school enrollment.[1] According to proper educational standards, the average ratio of pupils to teachers in a school system the size of that of the District should be not to exceed 26 to 1. Approximately that ratio (26.1 to 1) prevailed in the school year 1926–27, but owing to the increase in pupils and the failure of Congress to appropriate money for additional teachers, the ratio at the beginning of the school year 1936–37 was 30.1 to 1. The number of pupils enrolled in the junior high schools for the school year 1936–37 was in excess of capacity and in excess of the number enrolled in the school year 1935–36. Under appropriations made available for the public schools, funds were not provided to furnish sufficient classrooms, teachers, textbooks and supplies to accommodate the enrollment in junior high schools of children of nonresident parents employed in the District. The appellant had reported to the Board of Education of the District the congested condition of the schools, and the necessity for increased appropriations for the purpose of providing sufficient facilities for the education of children of both resident and nonresident parents, and these estimates were submitted to the Commissioners of the District. But as a result of the depression, and also as a result of reduction in the amount of the Federal contribution towards the support of the District, the revenues of the District decreased. To admit to the public schools of the District the children of nonresident parents other than in accordance with a policy below mentioned would result in depriving the children of parents resident in the District of the proper school facilities, in the overcrowding of classrooms and classes, in the reduction of hours of instruction, in the elimination of postgraduate work in high schools, and generally in serious curtailment of the educational program. As a matter of policy therefore, on account of the foregoing, no children of nonresident parents were enrolled for the school year 1936–37 in the junior high schools except such children as had been previously enrolled therein. In addition to the appellee, two other children whose parents were employed in the District but who resided outside, had applied for admission to the seventh grade and had been denied admission.[2]

To this answer the appellee filed a demurrer. Upon consideration of the demurrer the trial court sustained it, and the appellant then elected to stand on his answer. Judgment that the writ of mandamus issue was accordingly entered, and from that judgment this appeal was taken. By the assignment of errors two questions are presented for determination: first, are the words of the pertinent statute mandatory; if they are, then second, did the facts alleged in the answer and admitted by the demurrer require the trial court to refuse to issue the writ.

1. If the words of a statute are plain there is ordinarily nothing to construe. The intent of the legislature will be found from the words. If, however, words in themselves plain are inconsistent with the spirit or purpose of an act, they may be construed harmoniously therewith. Also, if extreme hardship will result from a literal application of the words, this may be taken as evidence that the legislature did not use them literally. For such reasons as these permissive words may be given a mandatory meaning and mandatory words a permissive one. These rules are elementary. In general text statements they are expressed and applied as follows:

"The word 'shall' in its ordinary sense is imperative. When the word "shall" is used in a statute, and a right or benefit to any one depends upon giving it an imper-

---

[1] The figures in the answer are to the following effect: The population of the District of Columbia increased from approximately 437,500 in 1920 to approximately 595,000 in 1935. The average number of pupils enrolled during the school year 1920-21 was 58,711 and in the school year 1935-36, 92,098. In the school year pertinent to the case, 1936-37, 92,781 pupils had been enrolled at the time of the filing of the appellant's answer in October 1936, the maximum enrollment being reached, according to experience, in November.

[2] It was also averred in the answer: Under the laws of Virginia a school board of any county bordering on another state which grants the same privileges to Virginia may in its discretion admit to the county schools free of tuition persons of school age residing outside of Virginia but near thereto. But a resolution of the County of Arlington School Board restricts the admission free of charge to the Arlington County schools to actual bona fide residents of that County, and provides for fees for nonresident pupils.

No mention is made in the brief, however, of this portion of the answer, and we therefore treat any point raised thereunder as abandoned.

ative construction, then that word is to be regarded as peremptory.' But the intent of the act controls, and when the spirit and purpose of the act require the word. 'shall' to be construed as permissive it will be done. . . ." [Lewis' Sutherland Statutory Construction, 2d ed., 1904, p. 1155]

"Whether the language of a statute is imperative or merely permissive depends on the intention as disclosed in the nature of the act and in the context. Although the words of a statute are merely permissive, directory, or enabling, they may nevertheless have the force of words of command where the power or duty to which they relate is for the advancement of public justice or the security and protection of public or private rights. . . . The word 'shall' in a statute may be construed as 'may' where the connection in which it is used or the relation into which it is put with other parts of the same statute indicates that the legislature intended that it should receive such a construction; but if any right to anyone depends on giving the word an imperative construction, the presumption is that the word was used in reference to such right or benefit. 'Shall' ought undoubtedly to be construed as meaning 'must' for the purpose of sustaining or enforcing an existing right, or when a public body is directed to do certain acts." [25 R.C.L. § 15, pp. 767–769] For illustration of the application of these rules by courts see Bay State Street Railway Co. v. Woburn, 232 Mass. 201, 122 N.E. 268; also United States v. Two Hundred and Sixty-Seven Twenty Dollar Gold Pieces (D. C.) 255 F. 217.

■ The statutory provision immediately pertinent to the appellee's claimed right of admission to the schools is undoubtedly mandatory, if the words therein are taken literally, and is also quite without ambiguity. It says simply: "All pupils whose parents are employed officially or otherwise in the District of Columbia shall be admitted and taught free of charge in the schools of said District." It is a part, under the title "Education," of the chapter on tuition of nonresidents, in the Code of the District of Columbia. We find nothing in the spirit or purpose of the chapter with which a literal meaning of the words used in Section 163 is inconsistent. The whole of the chapter is brief and is as follows:

"Chapter 5.—Tuition of Nonresidents.

"Section 161. Payment of tuition by nonresidents; Board of Education to fix amount of tuition; payments deposited in Treasury.—Except as otherwise provided in this chapter pupils shall not be admitted to or taught free of charge in the public schools of the District of Columbia who do not reside in said District, or who during such tutelage do not own property in and pay taxes levied by the government of the District of Columbia in excess of the tuition charged under this section to other nonresident pupils, or whose parents do not reside or are not engaged in public duties therein, or during such tutelage pay taxes levied by the government of the District of Columbia in excess of the tuition charged under this section to other nonresident pupils: *Provided,* That any other nonresident pupil may be admitted to and taught in said public schools on the payment of such amount, to be fixed by the board of education with the approval of the Commissioners of said District, as will cover the expense of tuition and cost of textbooks and school supplies used by such pupil; and all payments under this section shall be paid into the Treasury of the United States, to the credit of the District of Columbia. (Apr. 14, 1906, 34 Stat. 113, c. 1623; June 26, 1912, 37 Stat. 161, c. 182; June 29, 1922, 42 Stat. 669, c. 249.)

"162. Taxes levied and paid for year preceding time of levying tuition charge credited.—The taxes levied by the government of the District of Columbia and paid for the year next preceding the time of levying tutelage charges by nonresident pupils or the parents of nonresident pupils shall be accepted as a credit or part credit, as the case may be, on said tutelage. (July 21, 1914, 38 Stat. 536, c. 191.)

"163. Same; admission of pupils whose parents are employed in the District of Columbia.—All pupils whose parents are employed officially or otherwise in the District of Columbia shall be admitted and taught free of charge in the schools of said District. (Mar. 3, 1915, 38 Stat. 910, c. 80.)

"164. Soldiers and sailors on duty at stations adjacent to District of Columbia admitted without tuition.—Soldiers and sailors of the United States not residents of the District of Columbia who are on duty at stations adjacent to the District of Columbia shall be admitted for special instruction to the day schools and night schools of the District of Columbia without payment of tuition. (Mar. 28, 1918, 40 Stat. 470, c. 28.)

"165. Children of officers and men of Army and Navy and of employees of United States admitted without tuition.—The children of officers and men of the United States Army, Navy, and Marine Corps and children of other employees of the United States stationed outside of the District of Columbia shall be admitted to the public schools without payment of tuition. (May 10, 1926, 44 Stat. 433, c. 276; Mar. 2, 1927, 44 Stat. 1314, c. 271; Feb. 25, 1929, 45 Stat. 1279, c. 314; May 21, 1928, 45 Stat. 662, c. 659.)" [D.C.Code (1929), tit. 7, c. 5, §§ 161–165]

Reading the chapter as a whole, it is clear that its purpose is to provide for the payment of tuition by nonresident pupils, with certain exceptions, and to provide for the free instruction of nonresident pupils who are within the exceptions. We are unable to see anything inconsistent with this purpose in the terms of Section 163 read literally.

■ It is to be noted that in each of the three sections which specifically and independently provide for the admission free of tuition to the District schools of pupils residing outside the District (to wit, Section 163, pertinent to the instant case, Section 164 in respect of soldiers and sailors on duty at stations adjacent to the District, and Section 165 respecting children of officers and men of the Army and Navy and Marine Corps and of employees of the United States stationed outside of the District) mandatory terms are used. It is to be noted further that in that part of the general section, Section 161, which forbids admission free to the public schools of pupils who do not reside in the District and do not satisfy the other requirements set forth, the language is again mandatory in form. And finally it is to be noted that permissive language—the only permissive language in the chapter—is used in the proviso of Section 161 authorizing the admission of nonresident pupils upon the payment of tuition. It can hardly be thought accidental that Congress used mandatory language in one part of the chapter and permissive in another. Such use of words is significant of purposeful selection. In Smith v. School District, 241 Mich. 366, 217 N.W. 15, a statute relating to school district bond elections provided:

"The board of education of any school district, except primary school districts, *may* form said districts into one or more voting precincts as shall be necessary, and *shall* provide for the registration of voters, and for elections therein suitable ballot boxes, poll lists and other supplies or equipment as may be necessary or proper. . . ." [Italics supplied] [241 Mich. 366, at page 368, 217 N.W. at page 15]

It was contended that the word "may" should be given a mandatory meaning. Rejecting this contention, the Supreme Court of Michigan said:

"It will be noted that the permissive word 'may' is used in the first sentence of this section. In many of the other provisions of the act the mandatory word 'shall' is used and it is urged by plaintiffs that, by reason of the mandatory provisions of the act running through its entire structure, we should construe all the first section to be mandatory. Courts have not infrequently construed the word 'may' to mean 'shall' and *vice versa*. But this has been done to effectuate the legislative intent. It should not be done to stifle that intent. Here the legislature has used both the word 'may' and the word 'shall,' and we should give them their ordinary and accepted meaning unless so to do would frustrate the legislative intent. We are satisfied that a proper construction of the act requires the giving of the words their ordinary and accepted meaning. . . ." [241 Mich. 366, at pages 368–369, 217 N.W. at page 15]

The only pertinent legislative history to which we are referred indicates an intention by Congress consistent with a literal meaning of the words of Section 163. Senator Jacob H. Gallinger, a member of the Senate Committee reporting the bill, in speaking on the floor of Senate for the Committee, commented as follows:[3]

"Possibly the Senator has not looked at the amendment that the committee reported and which has been agreed to at the bottom of page 46. The committee has met with the proposition, on the one hand, that the schools should be open free of charge to everybody. On the other hand, it was claimed that they ought to be opened to the States contiguous to the District of Columbia. The present law allows people performing official duties here to have their children educated in the District of Columbia. The committee has enlarged that so as to provide that—

" 'Hereafter all pupils whose parents are employed officially or otherwise in the Dis-

---

3 52 Cong.Rec. (Part 2) 1756 (1915).

trict of Columbia shall be admitted and taught free of charge in the schools of said District.'

"So that any man from Maryland or Virginia or anywhere else who is doing business in the District will have free entree to the schools of the District. I think we have liberalized it to a very large extent."

We find no such extreme hardship resulting from a literal application of the words of Section 163 as may be taken as evidence that Congress did not intend its terms to be read literally. Indeed, no hardship is suggested except that portrayed in the answer, and such hardship arose long subsequent to the passage of the act. The question before us, so far as the meaning of the statute is concerned, is not what Congress might have done had it known of present alleged hardship, but what it did do.

We have had occasion recently in this jurisdiction to rule that where the language of a statute is plain, it is neither the duty nor the privilege of a court to speculate in search of a different meaning. De Ruiz v. De Ruiz, 66 App.D.C. 370, 88 F.(2d) 752. We think that we should be stepping beyond the bounds of judicial authority if in the instant case we ruled that the words of Section 163 have any but their apparent plain, mandatory, meaning.

2. In support of the point that, even if the statute is mandatory, the matters alleged in the answer required the trial court to refuse to issue the writ, the appellant relies upon the proposition that, although the remedy of mandamus is at law, its exercise is controlled by equitable principles. The appellant especially urges United States v. Dern, 289 U.S. 352, 53 S.Ct. 614, 77 L.Ed. 1250; United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650; Duncan Townsite Co. v. Lane, 245 U.S. 308, 38 S.Ct. 99, 62 L.Ed. 309; Seaboard Air Line Ry. Co. v. Atlanta, B. & C. R. Co. (C.C.A.) 35 F.(2d) 609; United States ex rel. Stowell v. Deming, 57 App.D.C. 223, 19 F.(2d) 697; Morgan v. Howard, 54 App.D.C. 3, 293 F. 650; Payne v. United States, 50 App.D.C. 119, 269 F. 198; and Matter of Nicoll, 44 Hun (N.Y.) 340. United States v. Dern recognizes a well settled general rule that the writ of mandamus "may be refused for reasons comparable to those which would lead a court of equity, in the exercise of a sound discretion, to withhold its protection of an undoubted legal right." But we think that the cases relied upon by the appellant as precedents for the application of this rule are distinguishable from the instant case. In United States v. Dern, the writ was refused because its issuance would have been burdensome to the Government without any substantially equivalent benefit, apart from what the court described as an incidental or irrelevant consequence, to those seeking the writ. In United States ex rel. Arant v. Lane, the petitioner's right to a writ was held barred by laches. The writ if issued in Duncan Townsite Co. v. Lane, would have been in aid of a fraud, and also would have controlled an administrative officer's discretion. Mandamus will not issue to control discretion. Calf Leather Tanners' Association v. Morgenthau, 65 App.D.C. 93, 80 F.(2d) 536. The relief sought in Seaboard Air Line Ry. Co. v. Atlanta, B. & C. R. Co., if allowed, would almost completely have disabled a railroad to perform its public duty. United States v. Deming was decided against the issuance of a writ for the reason that the petitioner had, within the sense of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, but a minute or abstract right. The writ was refused in Morgan v. Howard because the petitioner was confessedly seeking it for the purpose of injuring the one against whom the writ was sought. In Payne v. United States, issuance of the writ would have controlled the discretion of an administrative officer, and would have destroyed property rights equitably gained, whereas the refusal of the writ justly preserved the rights of all parties concerned. In Matter of Nicoll, while a writ of mandamus to compel admission of a child to a public school was denied, it does not appear that, as in the instant case, a statute applicable to the petitioning child was mandatory in terms, and it does appear that the ultimate ruling was based upon the proposition that to issue the writ would have been to control the discretion of the school board. The appellant also relies upon Life & Fire Insurance Company of New York v. Wilson's Heirs, 8 Pet.(33 U.S.) 291, 8 L.Ed. 949, for the statement: "The writ of mandamus is subject to the legal and equitable discretion of the court, and it ought not to be issued in cases of doubtful right." The right of the appellee in the instant case, the language of the pertinent statute being mandatory, is not a doubtful right. Under the facts of Life & Fire Insurance Company of New York v. Wilson's Heirs, the writ was issued to compel the performance of a ministerial duty by a public officer,

We think it cannot be said that such equitable considerations as were, in the foregoing cases, held effective to prevent the issuance of a writ, exist in the instant case. Moreover, what action a court should take in respect of refusing a writ of mandamus on account of equitable considerations must of necessity be determined upon the facts of the particular case before it, and cases involving equitable considerations so differ upon their facts that a ruling in one is not highly persuasive in respect of another.

Refusal to grant the writ sought in this case would as effectively deprive the appellee of the clear benefit granted her by the statute as would repeal of the statute by the Congress. We think that the considerations urged by the appellant are legislative rather than judicial in character. We cannot say that they were such as required the trial court, in the exercise of a sound discretion, to refuse the writ.

The statute involved in the instant case being mandatory and clear, the duty of the appellant to admit the appellee to the public schools of the District was purely ministerial. Mandamus is the orthodox remedy to compel the performance of a ministerial duty. Roberts v. United States, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443.

The judgment of the trial court sustaining the demurrer to the answer and ordering issuance of the writ was proper and is

Affirmed.

Judge VAN ORSDEL took no part in the decision of this case.