**CHARLSON REALTY COMPANY**
v.
**The UNITED STATES.**
No. 388–62.

United States Court of Claims.
Oct. 13, 1967.

Davis, Laramore, and Durfee, JJ., dissented.

Lawrence J. Hayes, St. Paul, Minn., for plaintiff. Joseph A. Maun, St. Paul, Minn., attorney of record. Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., of counsel.

Leonard S. Togman, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Philip R. Miller, Joseph Kovner, and Norman J. Hoffman, Jr., Washington, D. C., of counsel.

Before COWEN, Chief Judge, JONES, Senior Judge, LARAMORE, DURFEE, DAVIS, SKELTON and NICHOLS, Judges.

SKELTON, Judge, announced the judgment of the court in an opinion in which COWEN, Chief Judge, and JONES, Senior Judge, joined:

This is an income tax case. The plaintiff, Charlson Realty Company, is a Minnesota corporation which purchased 14.25 acres of unimproved land in Minnesota on April 27, 1953, for the sum of $40,000, for the purpose of constructing a building to be leased to the Charlson-Lynn Company (its grantor had bought the same real estate in 1952 for $10,650). Thereafter, it was determined that this property was not suitable for improvement for rental purposes because of certain zoning restrictions and other reasons. Since the plaintiff was not interested in developing the property for resale or lease to others, it sold the property on February 10, 1955, to Mabelle F. Charlson and Harriet C. Charlson, the mother and sister of Lynn L. Charlson, the president and sole stockholder of the plaintiff company, for the sum of $40,000 evidenced by their demand note in that amount payable to the company. The plaintiff alleges that the fair market value of the property on the date of sale and prior thereto was not in excess of $40,000, and the value of the note which it received for the property was not less than $40,000.

Thereafter, the purchasers constructed a building on 4.5 acres of the land at a cost of $268,323.18 and thereafter sold it for $356,460.63. The balance of 9.5 acres was sold by the purchasers for $103,585.67. The plaintiff alleges that it had no interest of any kind in said property or in the improvements made thereto after it sold the 14.25 acres for $40,000 on February 10, 1955. Furthermore, it was not interested in developing the property for resale or lease, and during the years 1954 and 1955 had no information of any nature that said 14.25 acres of unimproved land had a value in excess of the $40,000 for which it was sold.

On or about July 15, 1955, plaintiff filed its Corporation Income Tax Return for its fiscal taxable year ending April 30, 1955. This return disclosed net taxable income of $10,139.63 with a net tax due of $3,041.89. This tax was duly paid to the District Director of Internal Revenue on or about July 15, 1955. The Internal Revenue Service assessed a deficiency in income tax for 1955 against the plaintiff in the amount of $12,500, together with interest in the sum of $3,453.94, the basis for which was its claim that the 14.25 acres of land had a fair market value of $90,000 on February 10, 1955, the date it was sold by the plaintiff for $40,000, and that the sale resulted in a distribution of a taxable dividend to plaintiff's president and sole shareholder, Lynn L. Charlson. It further contended that plaintiff realized a taxable gain of $50,000 by reason of the sale, even though no amount in excess of its cost of $40,000 was ever received or realized by the plaintiff.

The Internal Revenue Service also assessed a deficiency in income tax against plaintiff's president, Lynn L. Charlson and wife, which is now the subject of litigation in the United States Tax Court and is not in any way involved in this suit.

The plaintiff paid the Internal Revenue Service said additional income tax and interest in the sum of $12,500 and $3,453.94, respectively, on February 23, 1960. On March 8, 1960, plaintiff filed a claim for refund of such additional tax and interest which it had been required to pay with the Internal Revenue Service. In such claim the plaintiff assigned as the ground upon which the claim was based the fact that plaintiff had not realized any gain on the sale of the 14.25 acres of land for $40,000, and that the Commissioner of Internal Revenue was wrong in finding that the plaintiff had realized a net gain of $50,000 on the sale.

While the first claim for refund was still pending, and before any action had been taken thereon by the Internal Revenue Service, the plaintiff, on July 25, 1960, filed an amended claim for refund of said deficiency assessment for $12,500 and interest in the sum of $3,453.94. This amended claim contained various

specific grounds on which such claim was based which were not contained in the first claim, all of which will be discussed in more detail in the following paragraphs.

While both of the claims were pending, the District Director of Internal Revenue for the District of Minnesota notified plaintiff by certified mail, dated September 21, 1960, of the disallowance of the first claim filed March 8, 1960. On December 6, 1960, the District Director notified plaintiff by certified mail that he had disallowed plaintiff's second claim for refund which it had filed July 25, 1960.

The plaintiff filed this suit for said tax and interest in the total sum of $15,-953.94, plus interest thereon, based upon plaintiff's second claim for refund and the disallowance thereof by the District Director. The defendant filed an answer to plaintiff's petition generally denying the basic allegations thereof and asserting an affirmative defense that this suit is barred by Section 6532 of the Internal Revenue Code of 1954, because it was begun after the expiration of two years from the date of mailing of a notice of disallowance of the claim to which the suit related. Thereafter, on December 13, 1963, the defendant filed a motion for summary judgment alleging that plaintiff's petition was not timely filed. Plaintiff opposed defendant's motion for summary judgment, and, after hearing oral argument, the court, by order entered on May 18, 1964, denied said motion "without prejudice" and referred the case back to the trial commissioner with directions to "investigate and report as to the mailing of plaintiff's petition, the handling of the mailed petition by the Post Office Department, and the receipt and filing of the petition in this court." The commissioner has complied with the directions of the court and has made his report only on this one jurisdictional issue raised by the defendant. Defendant renewed its motion for summary judgment in its briefs filed to the commissioner's report and the case is now before the court on such motion.

The defendant has made a two-pronged attack on plaintiff's case on jurisdictional grounds based on limitations, claiming that plaintiff has not filed its suit within two years from the date its claim for refund was disallowed by the District Director of Internal Revenue Service as required by law. In the first place, the defendant contends that plaintiff's first claim for refund and its second claim for refund were identical and the second claim did not add anything to the first claim but was a mere repetition of it, and, by reason thereof, the filing of the second claim did not extend the period of limitations within which plaintiff could file its suit. On this theory, defendant says that the plaintiff was required to file its suit within two years after September 21, 1960, the date the District Director of Internal Revenue Service disallowed the plaintiff's first claim. Plaintiff's petition was marked filed in this cause on December 7, 1962. On this theory, plaintiff's suit would be barred. However, the plaintiff contends that the second claim for refund was an entirely new and different claim from the first claim, and that it filed its suit within two years after the District Director disallowed its second claim for refund on December 6, 1960, notwithstanding the file date marked on the petition. If plaintiff's contention is correct, this court has jurisdiction to determine this suit insofar as this particular jurisdictional ground is concerned. These claims and theories will be further developed in subsequent paragraphs of this opinion.

The second jurisdictional ground asserted by the defendant relates to the time when plaintiff's petition was received by this court. The defendant says that the file mark on the petition shows that it was filed on December 7, 1962, whereas, it was required to be filed no later than December 6, 1962, if it be conceded that the basis of the plaintiff's suit is the disallowance of plaintiff's second claim for refund by the District Director on December 6, 1960. In other words, defendant contends that the suit was filed

one day late, and, accordingly, is barred by the two-year statute of limitations for suits of this kind. The plaintiff counters with allegations that it mailed the petition from St. Paul, Minnesota, on November 30, 1962, in an envelope properly sealed, stamped and addressed to the Clerk of this Court in Washington, D. C., and that in due course of the mails it arrived at the court on December 4th or 5th, 1962, or in any case, by December 6, 1962, the last day of the two-year period of limitations within which plaintiff could file the suit.

## I

### Statute of Limitations

At the outset, it is necessary for us to determine the primary questions presented in this case as to whether or not plaintiff's suit was begun within the applicable period of limitations set forth in Section 6532 of the Internal Revenue Code of 1954, which, as amended by Section 89(b) of the Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606 (26 U.S.C. § 6532(a) (1) (1964)), (hereinafter sometimes referred to as "the statute of limitations"), reads in pertinent part as follows:

  \*     \*     \*     \*     \*     \*

(a) Suits by taxpayers for refund.

(1) General rule.

  No suit \* \* \* under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun \* \* \* after the expiration of 2 years from the date of mailing by certified mail \* \* \* by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit \* \* \* relates.

Rule 1 of the Rules of the United States Court of Claims, as revised December 2, 1957, which was in effect at all times material to this case, provided in pertinent part as follows:

RULE 1. COMMENCEMENT OF SUIT

(a) Filing and fee—A suit in the United States Court of Claims shall be commenced by filing with the Clerk a petition conforming to the requirements of this rule and Rule 12 and by paying to him the filing fee required by Rule 84.

The defendant contends that the plaintiff did not file its suit within the two-year limitation period required by the foregoing statute and urges the two jurisdictional grounds based on limitations heretofore mentioned. On the other hand, the plaintiff insists that it has filed its suit in compliance with the statute of limitations and that the jurisdictional grounds alleged by the defendant are not applicable to the facts in this case.

## II

### The Two Claims for Refund

We will now consider whether plaintiff's first and second claims for refund are identical, or whether the second one is a separate claim containing different facts, grounds and theories for recovery to those contained in the first claim.

Both claims involve the same amounts, namely the tax of $12,500, together with interest thereon in the sum of $3,453.94. Both claims contain the grounds set forth by plaintiff as a basis for refund in the first claim, because such grounds were copied and quoted from the first claim in the second claim. The only ground for recovery alleged by plaintiff in the first claim was that it had sold the 14.25 acres of land for $40,000 on February 10, 1955, which was the exact amount that it had paid for the land, and that it had realized no gain on the sale of this real estate, but that the Commissioner of Internal Revenue had wrongfully determined that the amount realized on the sale was $90,000 and the taxpayer thereby realized a net gain of $50,000 on the sale of the property, thus resulting in the deficiency assessment, together with interest thereon.

The second claim for refund, on the other hand, in addition to setting forth the above grounds contained in the first claim, alleged various other and different grounds and theories for recovery. In

the second claim, the plaintiff alleged that at no time during 1954 and 1955, nor at the time of the sale of the property in February 1955, did the property have a fair market value in excess of $40,000; and that after February 10, 1955, the date of the sale, the taxpayer had no interest of any kind in the property or in the improvements made thereto. Also, it was alleged that the taxpayer was not interested in developing the property for resale or lease, and during the years 1954 and 1955 had no information of any nature that the property had a value in excess of $40,000. The second claim further stated that, in any event, if there was any gain to the taxpayer, it should be taken into account as income for the year 1956 and not for the year 1955. Plaintiff also alleged that the Internal Revenue Service had merely assumed that plaintiff had made a gain of $50,000 on the sale, which was erroneous and without support in fact. It was further claimed that the taxpayer did not participate in making the improvements on said land subsequent to its sale, and did not realize anything from the subsequent sale of the property by the purchasers after it had been improved, and that if any gain was realized by the owners of the property when it was sold by them in 1956, such gain is taxable income to them and not to the plaintiff. The second claim also requested a conference on the grounds set forth in the amended claim for refund. None of these grounds or theories of recovery were set forth in the first claim.

■ It is the view of this court that the two claims are separate and distinct and that the second claim alleges and asserts facts, grounds, and theories for recovery different from those set forth in the first claim. Furthermore, the second claim was filed by the plaintiff while the first claim was pending and before any action had been taken thereon by the District Director and less than six months after plaintiff had paid the additional income tax and interest, the tax and interest having been paid February

23, 1960, and the second claim having been filed July 25, 1960.

The second claim was not a mere repetition of the first claim, but is based upon new grounds, and, therefore, constitutes a separate claim which is entitled to independent treatment with reference to the statute of limitations. Accordingly, the limitation period commenced to run from the date the second claim was disallowed, namely, December 6, 1960, and plaintiff was entitled to file this suit up to and including December 6, 1962. See First Nat'l Pictures v. United States, 32 F.Supp. 138, 91 Ct.Cl. 83 (1940); Pacific Mills v. Nichols, 72 F.2d 103 (1st Cir. 1934); and Hills v. United States, 50 F.2d 302, 73 Ct.Cl. 128 (1931). The defendant relies on the cases of B. Altman & Co. v. United States, 40 F.2d 781, 69 Ct.Cl. 721 (1930), cert. denied, 282 U.S. 863, 51 S.Ct. 36, 75 L.Ed. 763; and Ragan-Malone Co. v. United States, 38 F.Supp. 290, 93 Ct.Cl. 316 (1941), and cases of like import. It should be pointed out that the cases cited by defendant can be distinguished on the facts from the present case. In the *Altman* case, when the second claim was filed, the taxpayer's time to sue had already lapsed by limitation. Also, the claims there were identical, and the second was a mere repetition of the first. In Ragan-Malone Co. v. United States, supra, the action asserted by the plaintiff was filed in an amended petition eleven years after payment of the tax, where only five years was permitted, and nine years after rejection of the claim, when only two years was permitted. The suit was clearly barred by limitations.

■ The fact that both claims ask for the same amount of refund does not make the two claims one and the same. First Nat'l Pictures v. United States, supra.

■ In the present case the District Director of Internal Revenue did not refuse to allow the second claim to be filed, but received and filed it and thereafter considered the claim and rejected it, all of which indicates that he considered it to be different from the first claim.

This was done within a period of less than one year after the plaintiff paid the additional taxes and interest. The case of Pacific Mills v. Nichols, supra, is authority for the proposition that if the District Director entertains the second claim and decides it adversely to the claimant, suit may be brought within two years thereafter in accordance with the statute. We are in accord with this principle, especially under the facts in this case.

## III

### The Filing of Plaintiff's Petition

We will now consider whether the plaintiff's petition was filed in this court on or before December 6, 1962, which was the last day of the two-year limitation period after the District Director of Internal Revenue disallowed the plaintiff's second claim for refund on December 6, 1960.

It is a well established rule of law that a petition is considered filed when it is delivered to the court. See Schultz v. United States, 132 F.Supp. 953, 132 Ct.Cl. 618 (1955); Central Paper Co. v. Commissioner, 199 F.2d 902 (6th Cir. 1952); Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, 198 F.2d 189 (8th Cir. 1952); Parissi v. Telechron, Inc., 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955); Bolduc v. United States, 189 F.Supp. 640 (D.Maine, 1960); Bates Mfg. Co. v. United States, 303 U.S. 567, 58 S.Ct. 694, 82 L.Ed. 1020 (1938).

Therefore, it becomes necessary to determine the date plaintiff's petition reached this court, since, according to the authorities, that would be the date on which the petition would be considered filed.

The facts with regard to the mailing and filing of plaintiff's petition are generally as follows:[1]

The plaintiff mailed its petition in a sealed envelope, weighing five and one-half ounces, properly addressed to the Clerk of this Court in Washington, D. C., on which was placed 55 cents of postage stamps, at the post office in St. Paul, Minnesota, at about 3:00 P.M. on Friday, November 30, 1962. There were no markings on the envelope to indicate that it was any particular class of mail. However, the amount of postage placed thereon was more than sufficient for it to be transported as First Class Special Delivery Mail, First Class Air Mail, First Class Certified Mail with return receipt requested, but not enough for it to travel as Registered Mail. Under these facts and circumstances, and, according to the testimony of credible expert postal employees, the letter was presumed to be First Class Mail and handled as such. The testimony of these expert postal employees showed that this First Class letter would arrive in Washington, D. C., on December 1st, 2nd, or 3rd, 1962, and at this court in due course of mails on December 3rd, 4th, or 5th, 1962, whether it traveled as First or Fourth Class Mail. It was proven that there was nothing to interfere with the regular movement of the mails between St. Paul, Minnesota and Washington, D. C., during this period, either outside the mails or within the postal facilities.

The evidence shows that this court maintained a guard at the front door of the court twenty-four hours a day, and that the customary habit and procedure of handling mail delivered to the court was for the guard on duty to receive the mail from the postman and to immediately stamp the date received on each letter or parcel of mail by means of either a stamp machine or a hand stamp if the mail did not fit into the stamp machine. At periodic intervals during the day the guard who had received the mail, or his replacement on duty, would take the mail thus stamped to the office of the Clerk of the Court where such clerk or his deputy would open the mail

---

1. We are indebted to Trial Commissioner Franklin M. Stone for his exhaustive development of the facts on this phase of the case, although we do not agree with many of his findings and inferences drawn therefrom. All relevant facts are contained in this opinion.

and stamp all petitions filed which he found in the mail, and docket them on the records of the court. The guards testified that they had no independent recollection of receiving the letter containing plaintiff's petition, but that all mail received during this period was stamped in accordance with their usual custom and practice and delivered to the clerk. They further testified that at no time did they find any letter that had been misplaced or that was on the desk of the guard on the day following the date that it had been received, stamped, and that all mail during this period had been received, stamped, and delivered to the clerk on the same day that it was received. They were testifying on the basis of their habit and custom and without any recollection of or reference to the letter containing plaintiff's petition, as they, of course, could not remember receiving it or any other particular letter as it came in.

The Deputy Clerk of this Court opened the envelope containing plaintiff's petition and handed the petition to another Deputy Clerk, who was in the act of docketing the case when he noticed that the date of December 7, 1962, which he had stamped on the petition was more than two years after the date of December 6, 1960, when the District Director of Internal Revenue disallowed plaintiff's second refund claim. The deputy clerk, realizing some question might arise as to limitations, retrieved the envelope in which the petition had arrived from the wastebasket where it had been thrown, and found that the envelope had also been stamped December 7, 1962, by the guard of the court at the front door. He filed the envelope along with the petition among the papers of the case so that it might be inspected if any questions arose. An inspection of the envelope revealed a post office stamp thereon showing that it was mailed on November 30, 1962, at St. Paul, Minnesota, and that it contained 55 cents in postage, which had been placed thereon by a postage stamp meter by a post office employee in St. Paul by means of two strips of stamps,

and that the envelope had been sealed and also properly addressed to the Clerk of this Court in Washington, D. C.

■ The defendant filed a motion for summary judgment, as stated above, on the ground that the petition was filed one day late. The plaintiff says that the petition was timely filed, and, to support this contention, it relies upon the well-established presumption that a letter which is properly sealed, stamped, addressed, and deposited in the United States Mails is presumed to reach the addressee and be received by him in due course of the mails. This presumption has been approved by many authorities and has long been recognized by the courts. See Dunlop v. United States, 165 U.S. 486, 495, 17 S.Ct. 375, 41 L.Ed. 799 (1897); Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Rosenthal v. Walker, 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884); Columbian Nat'l Life Ins. Co. v. Rodgers, 93 F.2d 740, 742 (10th Cir. 1937) and cases there cited; Central Paper Co. v. Commissioner, supra; Detroit Automotive Products Corp. v. Commissioner, 203 F.2d 785 (6th Cir. 1953); Schultz v. United States, supra; Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, supra; Borden Co. v. United States, 134 F.Supp. 387, 391 (D.N.J. 1955).

■ ■ Postal employees are presumed to discharge their duties in a proper manner. Boerner v. United States, 117 F.2d 387 (2d Cir. 1941), cert. denied, 313 U.S. 587, 61 S.Ct. 1120, 85 L.Ed. 1542; Henderson v. Carbondale Coal & Coke Co., 140 U.S. 25, 37, 11 S.Ct. 691, 35 L.Ed. 332 (1891). There being no evidence to rebut this presumption, it must be assumed that the employees handled plaintiff's letter in accordance with their regular duties and practices from the time it was mailed at St. Paul until it arrived at the court in Washington.

This is not the first time this problem has been considered by this court. It was fully discussed in the case of Schultz v. United States, supra. In that case, as here, the petition was placed in an

envelope which was properly sealed, stamped, addressed, and mailed to the court in time to reach the court within the limitation period in due course of the mails, but it was marked filed two days late by the clerk. The plaintiff, as here, relied upon the presumption of arrival of the petition in due course of the mails. Chief Judge Jones, in writing the unanimous opinion of the court, discussed with approval the presumption of arrival of the petition in due course of the mails,＊ citing cases, and holding that the presumption must prevail in the absence of direct testimony that rebuts it. The court held that the date stamped on the petition is not sufficient to overcome the presumption of arrival in due course of the mails and ordered the petition filed in time.

■ Other cases holding that the date stamp on the petition is not enough to rebut the presumption of arrival of the petition in due course of the mails are: Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, supra; Central Paper Co. v. Commissioner, supra; Borden Co. v. United States, supra; and Detroit Automotive Products Corp. v. Commissioner, supra. Actually the file stamp on the envelope or petition is nothing more than evidence of the method of procedure, habit and custom followed by the officers of the court in handling papers delivered to them in the proper discharge of their official duties. Such evidence adds nothing to the well-recognized presumption that public officers perform the duties of their office in a proper manner. But the cases hold that such a presumption will not overcome nor rebut the presumption of the arrival of a letter in due course of the mails. See Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, supra, and Rosengarten v. United States, infra.

The problem before us was again considered by this court in an opinion also written by Chief Judge Jones in the case of Rosengarten v. United States, 181 F. Supp. 275, 149 Ct.Cl. 287 (1960), cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed. 2d 53, where the court held that the petition was not timely filed. That case and the *Schultz* case, supra, are clearly distinguishable on the facts. There the person who was supposed to have mailed the document in question could not remember the details of the mailing, including the affixing of the stamps, the placing of the instrument in the envelope, and when and where he mailed it. The court held that the indefinite character of such evidence was such that a presumption of the arrival in due course of the mails and of receipt did not arise. In other words, there was no presumption at all of arrival in due course of mails. That case actually reaffirms the principles announced in the *Schultz* case, supra. It was pointed out by the court in that case in upholding the presumption, that the Government was only able to offer negative evidence, which was insufficient.

The case of Modern Engineering Co. v. United States, 113 F.Supp. 685, 126 Ct.Cl. 136 (1953), decided by this court, is distinguishable on the facts, because in that case there was direct and positive evidence when the letter was received at the office where its contents were to be filed.

■ The defendant seeks to overcome the presumption of the arrival of the petition in due course of the mails by presenting evidence of the habit and custom of the officers and employees of the court, showing in detail their method and procedure of handling mail arriving at the court, including the placing of a date stamp thereon. This is nothing but habit or custom evidence and is not sufficient to overcome the presumption of arrival in due course of mails. Such was the holding of the court in the case of Crude Oil Corp. v. Commissioner, 161 F.2d 809 (10th Cir. 1947). There the defendant proved the detailed method of handling the mail by the officers in the Internal Revenue Office in an attempt to show the late arrival of the document in that case. The court said this was not enough to overcome or rebut the assumption that it had arrived in due course of the mails.

A similar case is Borden Co. v. United States, supra, where the defendant proved the habit and custom of the mail clerk whose duty it was to stamp received mail and route it to the proper office in an attempt to rebut the presumption of receipt. The mail clerk there, as here, could not remember receiving the particular document, but testified from habit and custom that since it was stamped on a particular day "it must have been received that day." The court held that this evidence was insufficient to overcome the presumption of timely receipt.

The evidence as to the habit and custom of the court's officers and employees in handling the mail is negative evidence and has no appreciable value in proving the omission or commission of a specific act at a particular time when there is a presumption to the contrary as in this case. For instance, if many witnesses testified that they had never seen the door guard of the court place a date stamp on letters as they were delivered to the court, such evidence would not prove that he did not, in fact, stamp the date on a given letter. In like manner, if they testified that they had seen him stamp letters day after day for a long period of time, this would not prove he stamped the particular letter containing plaintiff's petition. It is simply negative evidence and is insufficient to prove that something happened or did not happen at a given time in the face of a presumption to the contrary. Such was the holding, in effect, of the court in the case of Jones v. United States, 226 F.2d 24, 27 (9th Cir., 1955) wherein the court stated:

> We regard the concededly proper and timely mailing of the claims in this instance as positive evidence giving rise to a strong presumption of delivery to the Collector. The showing that a search of the pertinent files in the latter's office revealed no record of the claims having been filed is a purely negative circumstance, insufficient, in our opinion, to rebut the presumption of delivery. * * *

See also Rosengarten v. United States, supra; Commissioner of Internal Revenue v. Welch, 345 F.2d 939, 943 (5th Cir. 1965); Spreitler v. Louisville & N. R. Co., 125 F.2d 115, 117 (7th Cir. 1941); Trust Co. of Chicago v. Erie R. Co., 165 F.2d 806, 809 (7th Cir. 1948), cert. denied, 334 U.S. 845, 68 S.Ct. 1513, 92 L.Ed. 1769; Gulf, M. & O. R. Co. v. Freund, 183 F.2d 1005, 1010 (8th Cir. 1950), cert. denied, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654.

Negative evidence as to habit, custom and procedure may create a presumption that the ordinary course of business or procedure was followed on a given day. Knickerbocker Life Ins. Co. v. Pendleton, 115 U.S. 339, 6 S.Ct. 74, 29 L.Ed. 432 (1885); Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799 (1897); and United States v. State of Washington, 233 F.2d 811, 816 (9th Cir., 1956). However, if such a presumption was created in this case by the offered testimony as to the custom and procedure in handling the mail at the court when it is received, it is not sufficient to overcome the strong presumption of the arrival of plaintiff's petition in due course of the mails. The cases hold that the presumption of arrival in due course of the mails cannot be overcome by another presumption. Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, supra; Rosengarten v. United States, supra.

A presumption cannot be overturned or rebutted by speculation or suspicion. It can only be destroyed or overcome by convincing and uncontradicted evidence to the contrary which clearly and distinctly establishes a fact so that reasonable minds can draw but one inference. Falstaff Brewing Corp. v. Thompson, 101 F.2d 301, 304 (8th Cir. 1939), cert. denied, 307 U.S. 631, 59 S.Ct. 834, 83 L.Ed. 1514; Wolfgang v. Burrows, 86 U.S.App.D.C. 340, 181 F.2d 630, 631 (1950), cert. denied, 340 U.S. 826, 71 S.Ct. 61, 95 L.Ed. 606. In addition to the foregoing, to overcome the strong presumption of the arrival of a letter in due course of the mails, the countervail-

ing evidence must show the contrary to be true by direct and positive proof of affirmative facts. The negative evidence offered by the defendant in this case fails to meet these requirements.

The plaintiff did everything that could be reasonably expected of it in the mailing of its petition to this court. See Hetman v. Fruit Growers Express Co., 200 F.Supp. 234 (D.N.J., 1961); Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, supra. There is no showing of negligence on its part. The petition was mailed in plenty of time for it to reach the court in due course of the mails within the limitation period. There was no negligence in its failure to send the letter by certified or registered mail. In fact, mail of this type could arrive later than ordinary mail because of the record keeping required of the postal employees. If it had been sent by air mail, that service might have speeded up the time of its arrival, but plaintiff would still have to rely on the presumption of arrival in due course of the mails. Even with air mail, we would still have the same presumption and the same argument if the envelope was stamped December 7, 1962, one day late, by the employees of the court.

The Court of Claims is a national court and receives petitions from all parts of the country. It is the almost universal practice of litigants and lawyers residing outside of the Washington area to send their petitions to the court by United States mail. It is impossible for them to know exactly what day or hour a petition will actually arrive at the court. All that they can do is mail their petitions in time to arrive at the court in due course of the mails, or journey to Washington and deliver them in person to the clerk. The latter course is far too expensive, time-consuming, and inconvenient to be expected of them. Consequently, every reasonable presumption of the arrival of a petition in due course of the mails when sent to the court by mail should be indulged in by this court.

Under all of these facts, and in accordance with the foregoing authorities, we hold that it is presumed that plaintiff's letter containing his petition arrived at this court in due course of the mails on or before December 5, 1962, and that this presumption is conclusive, since it has not been rebutted by direct, positive, clear and convincing evidence which is uncontradicted, to the contrary. Plaintiff's petition was timely filed.

Accordingly, defendant's motion for summary judgment is denied, and the case is remanded to the commissioner for proceedings in ordinary course.

JONES, Senior Judge (concurring):

Plaintiff's amended claim for a refund of income taxes was deposited in the Post Office at St. Paul, Minnesota, on November 30, 1960, addressed to the United States Court of Claims, Washington, D. C. On the envelope in which the petition was enclosed were placed sufficient stamps for transportation as first class mail.

The filing date in the court, as stamped on the petition, was December 7, 1960. The limitation period for a suit to be begun expired on December 6, 1960.

The plaintiff asserts that since the elapsed time between the mailing and the court docketing was 6 days, which was substantially more than sufficient for normal transportation and docketing even as fourth class mail, the claim should be held as having arrived in due time and having been actually filed within time for consideration on the merits. The normal time for transportation of first class mail from St. Paul to Washington, D. C., according to an official of the Post Office Department is 2 days for first class mail and 1 day longer for fourth class mail. It should have arrived at its destination not later than December 3d, and should certainly have been docketed before the end of December 6th.

The proof of timely mailing must be clearly established. While the fact of mailing and the presumption of timely arrival are rebuttable, the courts have held that the mere late filing marks in the court's records are not sufficient to

rebut the legal presumption of timely arrival if timely mailing is clearly established.

The facts in this case are strikingly similar to the facts in Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, 198 F.2d 189 (8th Cir. 1952). In that case there was placed in the mail at the Post Office in Dallas, Texas, on January 30, 1951, a petition for review of an income tax assessment. It was addressed to the Tax Court of the United States in Washington, D. C. The envelope bore stamps sufficient for first class transportation by United States mail. The case was docketed in the Tax Court, February 6, 1951, one day after the 90 days' limitation period had expired. The Tax Court on motion by defendant dismissed the suit on the ground that the petition was filed out of time.

The United States Court of Appeals reversed the Tax Court and permitted a consideration on the merits. Except for inference drawn from the delay in docketing there was no showing of specific lack of diligence either on the part of employees of the Post Office or the Tax Court. The court held it would be presumed to have arrived at the Tax Court in time and should be filed and docketed for consideration. *Arkansas Motor Coaches*, supra.

The distance from Dallas, Texas, to Washington, D. C., is practically the same as from St. Paul, Minnesota, to Washington, D. C. There, as here, the stamps were sufficient for first class mail. In the *Arkansas Motor Coaches* case the petition for review was mailed only 2 days before the permitted filing period expired. In the instant case there were 6 days. In that case the Eighth Circuit held that it would be presumed that the petition arrived before the time permitted for filing had elapsed, and the case would be heard accordingly.

The *Arkansas Motor Coaches* case enunciated the rule in 1952 that if a petition is mailed in sufficient time for it to reach the Tax Court in the normal course of the mail before the time limit for filing has expired it should be pre-sumed to have reached the court and been filed in time unless there is clear and satisfactory proof that it did not arrive at the court in time. In establishing this doctrine the Court of Appeals overruled the Tax Court which had held otherwise.

In a manifest effort to further liberalize the legal presumption incident to the timely mailing of claims and other documents, the Congress by Section 7502 of the 1954 Internal Revenue Code went beyond the ruling established by the circuit court's decision and provided that the time of mailing a document should be treated as the actual filing date in the Tax Court.

This enactment of Section 7502 in 1954 did not in any way affect the doctrine enunciated by the Eighth Circuit in 1952 that if a document is mailed in time to reach the court in the normal course of the mail it is sufficient to create a presumption of timely arrival. It merely added to this decisive ruling that in the Tax Court the date of original mailing should be treated as the date of actual filing in the Tax Court. That is all this section did. The section provided that the section making the mailing and filing date synonymous should not apply to any other court.

The principle had already been established that if mailed in time to reach destination in the normal course of transmission before the expiration of the limitation period, the court may, if in its judgment the facts of the case justify such action, conclude that the filing papers arrived at the court within the prescribed time. There is every reason to apply the principle enunciated by the *Arkansas Motor Coaches* decision to the situation in the instant case. The prior ruling by the circuit court in the *Arkansas Motor Coaches* case merely puts the local litigant and the out-of-town claimant on a more nearly even basis, and removes at least a part of the discrimination against the out-of-town claimant.

This rule is especially important in the United States Court of Claims which has national jurisdiction. The commission-

ers are sent all over the United States to conduct trials for the convenience of litigants, but the court's situs is Washington, D. C. The mailing privilege is especially needful for Pacific coast litigants, 3,000 miles away, and for people in Hawaii and Alaska who are several thousand miles farther away. Why should they have their limitation period shortened several days as against litigants living near Washington, D. C.? Many of the Government installations are on the coast. Manifestly, it is impractical to get on the train or plane and carry the document to Washington, D. C., at great expense.

The same principle has been applied in the following cases: Central Paper Co. v. Commissioner, 199 F.2d 902 (6th Cir. 1952); Detroit Automotive Products Corp. v. Commissioner, 203 F.2d 785 (6th Cir. 1953); Crude Oil Corporation v. Commissioner, 161 F.2d 809 (10th Cir. 1947); Schultz v. United States, 132 F. Supp. 953, 132 Ct.Cl. 618 (1955); Jones v. United States, 226 F.2d 24, 28 (9th Cir. 1955).[1]

It is not claimed in the instant case that the mailing date should be held to be synonymous with the filing date. It is simply claimed that since plaintiff mailed his claim in St. Paul on November 30, thus allowing substantially more than sufficient time for it to have reached the court in the normal transmission of the mails, it should, in line with the several decisions cited, be presumed to have been delivered to the court before the expiration date of December 6. This suit, therefore, should be held as "begun," within the terms of the statute, before the end of December 6, 1960. While we cannot shorten the period of limitation the court may determine when and where suit is begun if such determination is

reasonable under the wording of the statute.

This is in complete harmony with the principles announced in the cases cited above.

If this court were to deny a hearing on the merits it would be in direct conflict with the principle laid down by the Eighth Circuit in the *Arkansas Motor Coaches* case, which was decided two full years before the enactment of Section 7502 of the Internal Revenue Code of 1954.

This rule of the effective use of the mails is fair to everyone and unfair to no one.

Successful businessmen use the mails continuously in commercial transactions. In fact, they would be greatly handicapped if denied the use of the mails. The Government uses the mails in a multitude of transactions, including the handling of its dealings with millions of income tax paying citizens. By defendant's own regulations its demands and its jeopardy assessments are sent by mail to the taxpayer's last known address. It thus binds the citizen without any further requirement.

The Post Office Department is operated by the United States. It contracts for a consideration to carry the mails. The use of and reliance upon the United States mail service is almost universal. People everywhere use its facilities. The service is essential to modern business operations. The postal service is not perfect; no human institution can be. It nevertheless renders a wonderful service. Founded in the early days of our national life it has had nearly two centuries of successful operation. Its officials and employees have a natural pride in its accomplishments. It has justly earned the confidence of the people

---

1. Rule 5(c) of the United States Court of Claims recognizes the same principle: "(c) Additional Time After Service by Mail.—Whenever a party has the right or is required to do some act or take some proceeding within a prescribed period after the service of a pleading, mo- tion, or other paper upon him, and the service is made by mail outside the District of Columbia, 3 days shall be added to the prescribed period for points east of the Mississippi River, and 5 days shall be added to the prescribed period for points west of the Mississippi River."

of the United States. It is in no way remarkable that business, both private and governmental, trusts its efficiency in important business and personal transactions of all kinds.[2]

Is there any good reason why a litigant on the Pacific coast should have his period of limitation shortened by 8 or 10 days?

It would be a tragic injustice to deny plaintiff a hearing when it placed its petition in the Post Office in St. Paul with stamps sufficient to entitle it to be transported as first class mail, 6 days before the expiration of the filing date. A postal official testified that normally first class mail would be transported to its destination in 2 days, and that fourth class mail would take about a day longer. If we allow 2 days' tolerance it still should have arrived with a day or two to spare. There is not the slightest doubt that the papers were mailed in ample time. The circumstances preclude any other reasonable conclusion.

The evidence of timely mailing as well as timely arrival also is rebuttable. Nearly all alleged facts or apparently proven facts are rebuttable in any case. However, the evidence of timely mailing is so clearly established here that the defendant both in brief and oral argument concentrates in an effort to show late arrival, but it failed to produce any positive evidence of late arrival of the claim in this case. Certainly the evidence offered by defendant to overcome the presumption in the instant case that the petition arrived in time to have been docketed before the expiration date was unsatisfactory. It was wholly negative, and failed to overcome the presumption of timely arrival.

The right to a day in court is one of the most highly prized rights of any citizen of this Republic. I have always thought that one of the chief glories of the Constitution is the fact that you cannot take the shirt from the back of the ragged street urchin without either securing the lad's consent, or paying him for the rags, or at least permitting him a hearing as to how he came by the shirt.

This is a broad, big country. There are people living great distances away even in continental United States. Thousands of miles farther live the citizens of Hawaii and Alaska. Must they have their rights still further lessened or their time for asserting these rights further reduced? No one would suggest that a petition must be personally "toted" from Alaska or that otherwise the citizen should take a risk or gamble with his rights.

The plaintiff mailed its petition in the Post Office in St. Paul, Minnesota, November 30th. If another plaintiff in the Washington, D. C., area, with exactly the same facts, had submitted its claim December 6, the latter's case would be decided on the merits while the instant plaintiff's claim would be denied without a hearing even though it was mailed 7 days earlier. This would be true even though the second plaintiff mailed its petition in Washington, D. C., on December 6, since all ABCD street boxes in Washington, D. C., bear a sign to this effect, "Mail here before 11 a. m.—delivered before 3 p. m., local only."

Both plaintiffs would be using the same facility. Unless we apply the principle so clearly stated in *Arkansas Motor Coaches*, the one living in Washington would have a hearing on the merits while the one living in St. Paul (plaintiff herein) would be denied a hearing even though it acted 6 days earlier.

There is an inscription deeply engraved on the front of the Supreme Court building:

"Equal Justice Under Law."

Why should it not be applied in this case?

---

2. Hon. John R. Brown of the Fifth Circuit, in a dissenting opinion in Rich v. Commissioner, 250 F.2d 170, 177 (5th Cir. 1957), has a well reasoned discussion of this phase.

NICHOLS, Judge (concurring):

I agree with the commissioner (his Finding 73)[1] that this petition in cold fact arrived on December 7. Arrival on or before December 6 appears to me to be to all intents not a presumption merely, but a legal fiction. We know that as a practical matter sealed envelopes deposited with the United States Post Office, duly addressed and stamped, do not in this year of grace 1967—and did not in 1962—arrive with any such certainty and regularity as to justify the phrase "due course of mails" as a measure of time. The date of mailing no longer warrants any presumption whatever as to date of delivery. On the other hand, this court had in effect in 1962 procedures that seem to me adequate to assure that a packet arriving on or before December 6, would have been date-stamped on or before December 6, especially when it was no higher class than ordinary first-class mail, which was never delivered later in the day than 4:15 p. m. (Commissioner's Finding 55–f).[1]

The main thing the cases cited by the court tell me is that, in the circumstances here involved, courts have generally—and wisely—managed to avoid denying petitioners their day in court. "[I]f extreme hardship will result from a literal application of the words, this may be taken as evidence that the legislature did not use them literally." Ballou v. Kemp, 68 App. D.C. 7, 92 F.2d 556, 558 (1937). Presumptions or fictions serve well enough for a while, but we must avoid mistaking them for reality. I hope the splendid staff of this court does not believe that we really think them as inefficient and ineffectual as our chosen *ratio decidendi* obliges us to "presume."

We have a statute to interpret, and our touchstone must be the intent of Congress. I take it the real reason for erecting this presumption, and making it irrebuttable by such strong and convincing evidence, is that it is difficult to impute to Congress an intent to forfeit the plaintiff's chose in action in the circumstances here involved. I too, share that difficulty. I have always believed that our Congress normally intends its enactments, when apparently draconian in phraseology, to be mitigated by judicial and executive interpretation whenever the language comes into play in unforeseen situations, where absurd, harsh, or inequitable results, such as are wholly outside the apparent purpose of the legislation, would flow from a strictly literal interpretation. Laws put forth more than words; they have ends to achieve, and it is in this connection that Mr. Justice Holmes said, "words are flexible." International Stevedoring Co. v. Haverty, 272 U.S. 50, 52, 47 S.Ct. 19, 71 L.Ed. 157 (1926).

The classic case I believe still is Rector, etc., of Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), holding that a statutory penalty against prepaying the transportation costs of an alien entering the United States, under a contract for the performance of labor or services by him, did not apply to the plaintiff church's arrangement to obtain the spiritual guidance of an English minister. The court said (at p. 460, 12 S.Ct. at p. 512), "The object designed to be reached by the act must limit and control the literal import of the terms and phrases employed." See also Castell v. United States, 14 F.Supp. 654, 658, 83 Ct.Cl. 222, 229 (1936). Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 78 L.Ed. 1361 (1934), teaches us that like principles of construction are not excluded from the field of Federal taxation. A good case in this court is General Dynamics Corp. v. United States, 324 F.2d 971, 163 Ct.Cl. 219 (1963). The

---

1. References are to the commissioner's Findings in his report to the court, which are not adopted. The Findings, incorporated in Judge Skelton's opinion, are, I presume, contra. (See his f. n. 1). For reasons I indicate later on, I am just as glad the court does not adopt the commissioner's Findings. Suffice it to say they furnished abundant evidentiary support, in my opinion, for the commissioner's ultimate Finding 73, whatever else may have been erroneous about them.

government may itself invoke such reasoning against a taxpayer: thus in Procter & Gamble Manufacturing Co. v. United States, 19 C.C.P.A. 415, T.D. 45578 (1932), cert. denied, 287 U.S. 629, 53 S.Ct. 82, 77 L.Ed. 546, a statute assessing import duties against articles "imported from any foreign country" was applied to whale oil manufactured on the high seas in a foreign flag vessel, though the oil was not "imported from any foreign country" in any accurate use of the terms.

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. * * * This is not the substitution of the will of the judge for that of the legislator; for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, * * * or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act." Rector, etc., of Church of the Holy Trinity v. United States, supra, 143 U.S. at 459, 12 S.Ct. at 512. Can we believe Congress intended to cut off this petition? I cannot.

. The requirement herein, that a suit must be "begun" within two years, is not free from all ambiguity. As a matter of semantics, a person whose bullet has left his Mauser has "begun" his part in the combat. Plaintiff discharged his missile before the two year period ran out. It was thereafter in its trajectory and beyond his further control. Within the foregoing cases, it appears to me permissible to hold for the plaintiff without postulating a December 6 delivery date if the contrary result is outside the statutory scheme, as I believe it is. I suppose, of course, the Congress intended a plaintiff to forfeit his cause of action only for his own inertia, or that of his agents, not that of others outside his control.

Evidently, a forfeiture without fault would do nothing to stimulate exertion on the part of plaintiffs generally. I suppose further that all legislation respecting suits against the government has as one of its objects sparing the Congress from being inundated with private bills for relief. This being so, I believe the Congressional scheme should be construed as not visualizing the rejection of a claim on jurisdictional grounds where the same grounds would not be an appealing reason for rejecting a private bill, unless, of course, such purpose has been announced too explicitly for argument.

That the Congress has corrected the ambiguity with respect to the Tax Court (see § 7502 of the Internal Revenue Code of 1954) only is not persuasive to me in the absence of any indication that the Congress knew we might refuse jurisdiction in the circumstances here involved.

I would simply hold that this suit was "begun" not later than the last day the Congress intended to require it to be "begun", and I would do so without relying on any presumption postulating delivery "in due course of mails" at any given time.

If I am right, the inquiries conducted by the commissioner at the court's direction dealt largely in irrelevancies. At the same time they were cruel: to the law firm involved, to the Post Office Department, and to our own staff. I regret that our handling of the Report fails to preclude another such Roman Holiday in the future.

DAVIS, Judge (dissenting):

I cannot accept, on either of the different bases put forth by the judges comprising the majority, the holding that plaintiff's claim for a tax refund was timely filed by December 6, 1962.[1] However explained, this decision, in my view, runs counter to the proven facts or to the clear and unambiguous standards set forth in this court's recent pronounce-

---

1. I do not reach the other issue of whether the second refund claim was, in reality, separate from the first one.

ments on the presumption of receipt after mailing. Its effect is sharply to reshape the statutory limitations period for tax refund suits—a venture which courts should be loath to undertake.

I do agree with Judge Skelton that the plaintiff's petition was not filed, within the meaning of the limitations statute, until it was actually delivered to the court; mere mailing, even a timely mailing, would not be enough. See Modern Eng'r Co. v. United States, 113 F.Supp. 685, 687, 126 Ct.Cl. 136, 139–140 (1953); Schultz v. United States, 132 F.Supp. 953, 955–956, 132 Ct.Cl. 618, 622 (1955). That is what we have previously held, and what the great majority of other courts hold. I also concur that, under the court's procedures in effect in 1962, a petition would be timely filed if it were delivered to the mail desk, then located at the main entrance of our old building, within the two-year period. Ibid.

Moreover, I do not disagree that, in the circumstances here, a rebuttable presumption of due delivery and receipt arose from the facts found by the trial commissioner as to the mailing. It is true that the mail clerk from plaintiff's law firm did not exercise much care.[2] Insufficient postage was provided for the petition to have been sent by registered mail and neither the clerk nor the envelope bearing the petition indicated that other preferential mail service was desired. From its appearance, the package could conceivably have been considered fourth-class matter. The type of service was apparently left to the discretion of the postal employee at the St. Paul Post Office. But even as non-preferential mail, including fourth-class mail, in the ordinary course the petition would have been received for filing within the limitations period, and therefore plaintiff is entitled to the presumption of due delivery and receipt.

My dispute with Judge Skelton is over whether that presumption has been properly rebutted. All agree, in theory, that the presumption is not conclusive and can be overcome, but the rule announced by the plurality opinion is that the rebuttal must be by "direct and positive proof of affirmative facts", not by "negative evidence as to habit, custom and procedure." This impossibly high standard echoes arguments previously advanced and unmistakably rejected by the court. In Modern Eng'r Co. v. United States, 113 F.Supp. 685, 126 Ct.Cl. 136, (1953), the plaintiff mailed a Lucas Act claim which normally would have arrived at the appropriate bureau of the Navy Department within the limitations period. Solely on the basis of the date of receipt written by the Navy's employees on the face of the claim, the court found that the letter was delivered after the time-bar had fallen—thus rejecting plaintiff's argument that a presumption of timely delivery was created which was not rebutted. While the opinion does not indicate whether the court refused to indulge in the presumption at all or considered it rebutted by the notation of the receipt date on the document, the dismissal of the claim did expressly reaffirm this court's acceptance of the settled rule that the risk of using the mails must be borne by the plaintiff, and that filing "is not complete until the document is delivered and received." United States v. Lombardo, 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897 (1916). We noted that "[p]laintiff's present predicament [late filing] stems solely from the fact that it did not make any allowance for a failure of the mail to move strictly according to schedule * * *. The occurrence of these conditions, however, is a risk which plaintiff must be held to have assumed when it elected to use the mails as a means of filing its claim." Modern Eng'r Co. v. United States, supra,

**2.** In this respect, I differ from Judge Skelton's conclusion that "[t]he plaintiff did everything that could be reasonably expected of it in the mailing of its petition to this court" and "[t]here is no showing of negligence on its part." The trial commissioner's detailed findings show the contrary, and there is no reason to reject his findings, which are based on testimony which he heard personally and evaluated carefully.

113 F.Supp. at 687–688, 126 Ct.Cl. at 140–141.

The most recent précis of this court's attitude toward the filing of petitions by mail is Rosengarten v. United States, 181 F.Supp. 275, 149 Ct.Cl. 287 (Jones, C. J.), cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960). We there set forth the two major rules applicable to this kind of case. First, in limited circumstances and upon receipt of "compelling evidence" of correct preparation, addressing, and mailing, the court will recognize a presumption that a paper sent through the mails was duly delivered and received by the addressee. The evidence "must be strong enough to suggest that it is highly probable that the filing has taken place. Otherwise no presumption will be indulged." Id., 181 F.Supp. at 277–278, 149 Ct.Cl. at 291–292. Second, this presumption can be overcome by appropriate proof. Rebuttal evidence, however, need not be of the same quality or quantity as that required to raise the presumption. On the one hand, mere evidence that there is no record of the date of receipt of a petition is insufficient. At the other pole, it is not necessary for the Government to establish with absolute certainty that the claim was not lost after being received or that no delay occurred between the receipt and the clerk's stamping of the claim. More specifically, the court in Rosengarten directly and unequivocally stated that the presumption of due delivery and receipt cannot prevail against evidence of the "general and specific procedures" of the office responsible for the receipt of petitions, where such proof indicates that it is improbable that a claim was improperly handled. Id., 181 F.Supp. at 278, 149 Ct.Cl. at 292. In Rosengarten, the office was the local unit of the Internal Revenue Service and evidence of the step-by-step treatment of incoming mail was offered to show that it was unlikely that a claim would be misplaced. Today, we are concerned with the administrative procedures established by the clerk of this court and, as the trial commissioner's findings show, adequate evidence has been received to demonstrate that the likelihood of delay and mishandling of the petition was minimal. The type of proof is the same as in Rosengarten and the applicable legal principle is exactly the same. Yet the plurality opinion today repudiates that principle without acknowledging that it is doing so. In silently jettisoning this aspect of Rosengarten, the court ignores that that decision held, alternatively, that no presumption arose and also "in any event" that even a presumption based on stronger evidence "would not prevail against the evidence offered by the Government as to the general and specific procedures of the local Internal Revenue office." Ibid.

Schultz v. United States, 132 F.Supp. 953, 132 Ct.Cl. 618 (1955) (Jones, C. J.), is entirely consistent with the later Rosengarten ruling. Schultz recognized the propriety of receiving evidence of general and specific procedures, employed by our clerk's office, in rebuttal. Reviewing the procedures then employed, however, the court correctly found that the date of receipt stamped on the petition "does not necessarily indicate * * that plaintiff's petition arrived on that day [July 16] since it was the custom of the clerk's office at that time to stamp the Monday [July 16] filing date on all papers that had arrived on the previous Saturday or Sunday." Id., 132 F.Supp. at 954, 132 Ct.Cl. at 620. Such evidence could not rebut the presumption that the petition was properly delivered (within the limitations period) on Saturday, as plaintiff claimed it was. The decision does not even hint that evidence of more exact and reliable procedures would not have been adequate to rebut the presumption of due delivery and receipt.

In the present case, the evidence plainly shows the more exact and reliable procedures, adopted by our clerk, which warrant the finding made by the trial commissioner that the date stamp on plaintiff's petition represents its actual date of receipt by the court. Not only has the defendant presented uncontradicted evidence of the general and specific

procedures employed by the clerk's office to ensure the proper handling and dating of incoming mail, but the evidence has also described with considerable specificity the movements, observations, and actions of members of the clerk's office (as they relate to plaintiff's claim) during the critical days. The trial commissioner has correctly found these detailed facts:

As non-preferential mail, the petition would have been delivered only in the course of one of three ordinary deliveries regularly made to the court each business day. Therefore, if it was delivered within the limitations period (ending on December 6, 1962), it could have arrived no later than approximately 2:00 P.M. on December 6th, the hour of the last regular daily mail delivery.

All mail deliveries made to the court during regular business hours were received at a mail desk located inside the front door, i. e., the main entrance, of the then court building. An employee of the court was regularly assigned to duty at the mail desk from 7:45 A.M. until 5:15 P.M., the normal closing hour for Monday through Friday, except on holidays, and it was his responsibility to accept all mail delivered to the court by the postman. Upon receipt of the mail, the employee would sort it and stamp all envelopes addressed to the clerk. Ordinary letter-size mail was fed into a time-stamp machine which showed the time and date received. Larger packages, such as plaintiff's, were hand-stamped to show the date of receipt. The hand stamp was adjusted each morning before the first regular mail delivery by the employee on duty at the mail desk. The envelope in question was stamped "Received Dec–7 1962 Office of Clerk". Mail addressed to the clerk received during regular business hours was delivered to the clerk's office on the first floor of the building or to the docket section of the clerk's office on the second floor.

The court maintained personnel in the building 24 hours a day, seven days a week, including holidays, so it was possible to accept mail and papers for filing at all times. Mr. Cole, a long-time employee of the court, was regularly assigned to the mail desk from 7:45 A.M. to 4:15 P.M. each regular working day. After Mr. Cole left for the day, his place at the mail desk was taken by some other court employee who remained there until the court was closed. As just indicated, all ordinary mail deliveries regularly made daily to the court were received prior to the time Mr. Cole went off duty. Mail addressed to the clerk and papers for filing received between the time Mr. Cole left work and 5:15 P.M. were delivered to the clerk or the docket section of the clerk's office in the same manner as was done while Mr. Cole was on duty. Special delivery mail and papers for filing received after regular business hours were accepted by court employees assigned to night shifts, who noted on such items the time and date of arrival thereof and deposited them on the desk of either the clerk or chief deputy clerk of the court. Mr. Cole was on duty during the entire week of December 3, 1962, and testified that he had not found mail of any kind on his desk when he arrived for work in the morning.

I agree with Commissioner Stone that it is apparent from the foregoing facts that, in order to conclude that the presumption of normal delivery has not been rebutted, we would have to find that the envelope bearing plaintiff's claim arrived at the court while Mr. Cole was on duty but that he negligently failed to stamp the envelope properly and to route it to the clerk's office, and that he left the item on his desk when he went off duty; that the night employees similarly failed to note the date on the envelope and remove it from Mr. Cole's desk and deposit the item on the desk of either the clerk or chief deputy clerk; and that Mr. Cole presented untruthful testimony when he stated that he never had found mail on his desk in the morning upon arriving for work. Like the commissioner, I believe that there simply is no warrant in the record for making such a series of inferences, and that all

the evidence in fact points in the other direction.

Indeed, the trial commissioner explicitly found that the testimony of Mr. Cole that no mail was ever on his desk in the morning when he arrived for work was clear and convincing. Accepting this as a fact, it follows that the envelope must either have been delivered to the clerk's office prior to the morning of December 7, 1962, or that it arrived in one of the regular deliveries on that day because Mr. Cole would have no mail for the clerk's office before the first regular delivery of the day. But the testimony establishes beyond question, and the plaintiff concedes, that the envelope containing plaintiff's petition did not arrive in the docket section of the clerk's office until December 7, 1962; that on the same day the chief deputy clerk first saw the envelope, removed its contents and stamped the petition as filed on that date; and that thereafter, on December 7, 1962, an entry was made in the docket indicating that the petition was filed on that day. The only reasonable conclusion is that the petition arrived at the court on December 7th—a day after the termination of the filing period.

None of the decisions cited in the other opinions, except possibly one part of Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, 198 F.2d 189 (C.A. 8, 1952), indicates that *on the present facts* the petition should be deemed timely. Crude Oil Corp. v. Commissioner, 161 F.2d 809 (C.A. 10, 1947), reversed a Tax Court finding of untimeliness solely because the latter had made the legal error of ruling that the presumption of delivery after mailing was overborne by the parallel presumption of the correctness of the determination of the Commissioner of Internal Revenue that the filing was late; far from rejecting the Government's evidence of careful handling of mail, the Court of Appeals returned the case "for decision wholly on the evidence", giving "no weight to the presumption of correctness of the Commissioner's finding." Id. at 810–811. In Borden Co. v. United States, 134 F.

Supp. 387 (D.N.J., 1955), there was no proof, as in this case, of the course of handling of mail within the receiving agency; all that appeared was that the letter was stamped received six months after it was mailed and a long time after it had already been reported missing within the agency (after an inquiry by the claimant had initiated a search). In Central Paper Co. v. Commissioner, 199 F.2d 902 (C.A. 6, 1952), the court, after reviewing the Tax Court's customary procedures, concluded that as a matter of fact the petition reached a ledge by the lock-box maintained by the Tax Court at the local post office within the limitations period, and that such delivery to the ledge was sufficient even though the paper did not reach the clerk's office until after the period had expired; the issue of whether or not delivery to or near the lock-box constitutes a "filing" is of course not present in our case.

In Arkansas Motor Coaches, Ltd., Inc. v. Commissioner, supra, 198 F.2d 189, the taxpayer, who "meticulously followed the sanctioned procedure and was guilty of no negligence", mailed his petition so that it would ordinarily have been delivered and filed with the court within the proper time. An entry on the court's docket, but not on the petition itself, indicated that it was received after the statutory period. The majority of the panel assumed that the delay was "either the fault of the employees of the Post Office or the employees of the Clerk's office," and concluded that the taxpayer should not be penalized for the negligence of government employees. Id. at 192–193. This view that the negligence of postal employees will excuse the late filing of a petition is contrary to the Supreme Court's decision in United States v. Lombardo, supra, 241 U.S. at 76–79, 36 S.Ct. 508, 60 L.Ed. 897, as well as numerous lower court decisions. Judge Johnsen's concurring opinion in *Arkansas Motor Coaches* rejected it as "fraught with implications". 198 F.2d at 193. Central Paper Co. v. Commissioner, supra, 199 F.2d at 904, expressly rejected the position that late filing of a petition

is excused if the delay is caused by matters over which the plaintiff has no control. I, too, find the Eighth Circuit's statement insupportable in law and unsatisfactory in practice. In any event it is inapplicable here.[3]

To the extent that the Eighth Circuit's decision in *Arkansas Motor Coaches* rested on the conduct of *court* employees the case is clearly distinguishable. As Judge Johnsen observed in his concurring opinion, the docket entry "will not necessarily represent the date of legal receiving, if the receipt is one which does not automatically channelize itself into the court's mailing room routine processes * * *." "[I]t must be possible for us to find, from direct testimony or on circumstances, that there had been some breakdown in the processes of that machinery, which was responsible for the taxpayer's petition not having been formally filed and docketed" during the limitations period. 198 F.2d at 194. The facts in *Arkansas Motor Coaches,* supported such a finding. Convincing testimony in our case requires the contrary result.

Not only is dismissal of this petition, as untimely filed, strongly suggested by our own previous decisions, compelled by the specific proof in this case, and harmonious with the general course of judicial rulings, but it is also supported by independent considerations. Use of a rebuttable presumption of due delivery and receipt, after a claim has been properly mailed, is intended to relieve a petitioner from the task of presenting evidence which is not readily available. Its effect should be limited to shifting the burden to the Government of going forward with evidence of nonreceipt or late receipt. We should not, however, relieve one party of a difficult burden by imposing an almost impossible one on the other. The plurality's current view that the presumption of due delivery can be rebutted only by "direct and positive proof of affirmative facts" has that undesirable effect.

In view of the specific, detailed, and cumulative proof offered here—which Judge Skelton stigmatizes as ineffective "negative evidence"—the plurality must mean by "direct and positive proof" evidence bearing directly and specifically on the single piece of mail in dispute. This is a very heavy burden, hardly one capable of being met. We cannot demand or expect a government clerk to be able to identify the trail of each of the many petitions or documents which initiate or affect judicial proceedings. To impose such a requirement would, in cases like the present, operate to accelerate the moment of filing from delivery toward the time of mailing. Whether that result comes by explicit judicial ruling or through the use of an almost conclusive presumption, it remains contrary to the established rule that "[f]iling * * * is not complete until the document is delivered and received. 'Shall file' means to deliver to the office and not send through the United States mails. * * * A paper is filed when it is delivered to the proper official and by him received and filed. * * *" United States v. Lombardo, supra, 241 U.S. at 76, 36 S.Ct. at 509. This standard has been widely followed by other federal tribunals and should not now be avoided by this court.[4] See, e. g., Evans v. Jones, 366 F.2d 772 (C.A. 4, 1966); Phinney v. Bank of the Southwest Nat'l Ass'n, 335 F.2d 266, 268 (C.A. 5, 1964); Ward v. Atlantic Coast Line R. R., 265 F.2d 75, 80–81 (C.A. 5, 1959), rev'd on other grounds, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960) (per curiam); Di Prospero v. Commis-

3. In the present case there is an express finding that there was no negligence by employees of the Post Office Department.

4. Judge Nichols' opinion would reject our own prior decisions and the holdings of the other courts and go even further than the majority in the *Arkansas Motor*
*Coaches* case since his view does not rest on any negligence of the post office's or the court's employees. I think that such overruling would also contradict the Supreme Court's decision in United States v. Lombardo, supra. The same is true of Judge Jones' separate opinion, as I understand it.

sioner, 176 F.2d 76 (C.A. 9, 1949); Stebbins' Estate v. Helvering, 74 App.D.C. 21, 121 F.2d 892, 893–894 (1941); Poynor v. Commissioner, 81 F.2d 521, 522 (C.A. 5, 1936). Most lawyers know of cases which have failed because a petition or complaint reached the tribunal, through the mails, one or two days late. Many a certiorari petition, for instance, has been denied by the Supreme Court for this reason.

Of course, there is often a feeling of discomfort when a party thus fails to obtain a ruling on the merits. But a court's power to ease the effects of a limitations period established by Congress for suits against the sovereign is relatively narrow. See Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed. 2d 306 (1957). Time-bars for tax refunds "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." Kavanagh v. Noble, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947); see Rosenman v. United States, 323 U.S. 658, 661, 65 S.Ct. 536, 89 L.Ed. 535 (1945); Tolerton & Warfield Co. v. United States, 285 F.2d 124, 125, 126, 152 Ct.Cl. 402, 404, 406 (1961); Melchior v. United States, 145 F.Supp. 193, 194, 136 Ct.Cl. 483 (1956). The Supreme Court "has consistently ruled that no federal judge or court possesses the power to extend the time for appeal beyond the statutory period by any form of judicial action * * *." Hill v. Hawes, 320 U.S. 520, 525, 64 S.Ct. 334, 336, 88 L.Ed. 283 (1944) (Stone, C. J., dissenting). Though we might, if we were legislators, prefer to change some of the existing statutory requirements, we cannot as judges absolve a petitioner

from the consequences of his failure to pursue his existing remedies in a timely manner. See Evans v. Jones, supra, 366 F.2d at 773; Chambers v. Lucas, 59 App.D.C. 327, 41 F.2d 299 (1930).

Relief from these rigors of limitations, where it seems to run unfairly, should originate in Congress rather than the courts. The legislative branch has been cognizant of this responsibility in the tax field. In 1954 Congress amended the existing rule by providing that most documents to be filed with the Internal Revenue Service and the Tax Court shall be deemed filed on the date of the postmark. The statute specifically added, however, that "This section shall not apply with respect to the filing of a document in any court other than the Tax Court." Int.Rev.Code of 1954, § 7502 (d). Explicit legislative limitation of this new rule provides a further reason why we should not follow the course of the majority. Similarly, Congress has provided that a party has thirty days to appeal from a judgment of a district court to a court of appeals but that the time for filing the notice of appeal may be extended upon a showing of "excusable neglect." Fed.R.Civ.P. 73(a), 28 U.S.C. § 2107 (1964).[5] But Congress has not changed the rule, or made it more lenient, for refund suits or other claims commenced in this court. We should continue to apply to the facts of this case the standards established by our prior decisions and the general judicial practice, and leave modifications to the legislature.

LARAMORE and DURFEE, JJ., join in the foregoing dissenting opinion.

5. Recently the scope of "excusable neglect" was expanded. See H.R.Doc. No. 391, 89th Cong., 2d Sess. (Feb. 28, 1966); Evans v. Jones, supra, 366 F.2d at 773.