Thomas T. CARTER, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 450–88T.

United States Claims Court.

Oct. 13, 1988.

Hugh J. Ritchie, Los Angeles, Cal., for plaintiff.

Stuart J. Bassin, Washington, D.C., with whom was Asst. Atty. Gen., William S. Rose, Jr., for defendant.

## ORDER

NAPIER, Judge.

Plaintiff's complaint, filed in the Clerk's office on August 1, 1988, is founded upon 28 U.S.C. § 1346(a)(1) invoking this Court's jurisdiction over income tax refund matters. It is not necessary to recite the facts alleged in the complaint to dispose of plaintiff's pending motion, entitled "Motion For Corrective Order Re Filing Date."

In his motion filed on September 6, 1988, plaintiff has moved to change the date of filing from August 1, 1988, the date determined under Rule 3(b)(1), RUSCC, to July 29, 1988, the last day allowed by the statute of limitations for filing the complaint.

In opposition to plaintiff's motion, defendant filed a brief and supporting affidavit on September 19, 1988. Plaintiff did not file a reply, which was due on October 3, 1988.

After considering plaintiff's motion, defendant's brief in opposition, applicable Court rules, and relevant case law, the Court must deny plaintiff's motion for a corrective order and dismiss the action.

### Discussion

Rule 3(b)(1) provides "the records of the clerk, including the date stamped on the complaint, shall be final and conclusive evidence of the date on which a complaint was filed, in the absence of the filing and allowance of a motion under subdivision (b)(2) of this rule."

Subdivision (b)(2) of Rule 3 provides as follows:

(2)(A) A party plaintiff who contends that the effective date of his complaint should properly be a date earlier than that shown by the clerk's records may seek a corrective order from the court by means of a motion.

(2)(B) Upon motion of a party plaintiff supported by a proper showing that the clerk's records are factually incorrect, the court will correct the records by order.

(2)(C) In a situation where a complaint is stamped by the clerk after the last date allowed by a statute of limitations for the filing of the complaint, if the complaint was received by the clerk through the mail, it may, by order of the court, upon motion of the party plaintiff, be deemed to have been filed on the last date allowed if there is a proper showing (i) that the complaint was sent by registered or certified mail, properly addressed to the clerk of the court at 717 Madison Place, N.W., Washington, D.C. 20005, and with return receipt requested; (ii) that it was deposited in the mail sufficiently in advance of the last date allowed for filing to provide for receipt by the clerk on or before such date in the ordinary course of the mail; and (iii) that the party plaintiff as sender exercised no control over the mailing between the deposit of the complaint in the mail and its delivery.

Since plaintiff's motion is predicated upon Rule 3(b)(2)(C), it must satisfy the three requirements of the Rule in order to prevail.

First, plaintiff must make a proper showing that the complaint was sent by registered or certified mail, properly addressed to the Clerk of the Court at 717 Madison Place, N.W., Washington, D.C. 20005 and with return receipt requested. By affidavit dated August 30, 1988, and attached to the motion, plaintiff's attorney, Hugh J. Ritchie, gave the following declaration:

1. That the Complaint of Thomas T. Carter in the above-entitled matter was sent in the United States mail on July 27, 1988, by certified mail, properly addressed to Clerk of Court, United States Claims Court, 717 Madison Place N.W., Washington, DC 20005, with return receipt requested.

2. That the mailing of the Complaint on July 27, 1988, allowed a minimum of two days for the Complaint to reach the Court which was sufficiently in advance of July 29, 1988, the last date for filing the complaint, to allow for receipt by the clerk on or before such date. July 29th was a Friday. The Complaint was stamped on Monday. Declarant alleges that in the normal course of the U.S. Mail the Complaint should have been received by July 29th.

3. That the copies of the Receipt for Certified Mail and Return Receipt attached hereto as Exhibit 2 are true copies of the originals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 30, 1988

/s/ HUGH J. RITCHIE

The Ritchie declaration satisfies all of the elements of the first prerequisite set forth in Rule 3(b)(2)(C)(i). Furthermore, there is no evidence that plaintiff has not satisfied the third prerequisite in Rule 3(b)(2)(C)(iii). It was not referred to in the Ritchie declaration and defendant has not challenged plaintiff's satisfaction of the third prerequisite.

It is the second requirement for which plaintiff is unable to make a proper showing and upon which this ruling turns. Rule 3(b)(2)(C)(ii) requires the complaint be deposited in the mail sufficiently in advance of the last date allowed for filing to provide for receipt by the clerk on or before such date in the ordinary course of the mail. Thus, under the rule, plaintiff must establish that a letter mailed from Commerce, California,[1] during July 1988, would reach

---

1. The Court notes that the receipt for certified mail attached to the Ritchie declaration is stamped "City of Commerce, Ca., July 27, 1988." Defendant's opposition brief refers to Los Angeles, California, as the point of mailing with no reference to Commerce, California. The Court, however, takes judicial notice of the fact that Commerce, California, is a postal subdivision of the Los Angeles division.

its destination in Washington, D.C., within two (2) days in the ordinary course of the mail. Plaintiff's only evidence that such a letter would be delivered within two (2) days in the ordinary course of the mail is the unsupported declaration of counsel, Mr. Ritchie, while defendant submitted the affidavit of Bryan A. Bailey, a United States Postal Service employee responsible for compiling statistics regarding postal delivery. The Bailey affidavit states that a letter mailed from Los Angeles, California, during July 1988 would not be delivered within two (2) days in the ordinary course of the mail. His affidavit indicates that only 7 percent of the metered mail and 45 percent of the stamped mail sent from Los Angeles, California, to Washington, D.C., is delivered within two (2) days; that the published delivery standard for ordinary delivery of such mail is three (3) days. Most importantly, he stated that the use of certified mail (as is the case here), would serve to further delay ordinary delivery by at least one more day.[2] *See* Appendix A, Affidavit of Bryan A. Bailey.

A proper showing under Rule 3(b)(2)(C) must be supported by more than an unsubstantiated declaration of plaintiff's counsel, as here, where the Court has before it opposition to the motion, buttressed by the affidavit of a Postal Service employee containing official statistics which are contrary to the unsubstantiated contentions of plaintiff's counsel.

Rule 3(b) represents the Court's adoption of a rule to conform to the standard set forth in *Charlson Realty Co. v. United States*, 181 Ct. Cl. 262, 384 F.2d 434 (1967), *reh'g denied* (1968).

In *Charlson*, defendant moved for summary judgment dismissing plaintiff's petition to recover taxes alleged to have been erroneously assessed and collected based upon the fact that the claim was not filed by the taxpayer within the period set forth by the applicable statute of limitations. The Court held that the suit was begun by the taxpayer within the applicable period

and that proof that plaintiff's petition was properly sealed, stamped, and addressed to the Clerk of the Court of Claims in Washington, D.C., and deposited in the mail on November 30, 1962, in St. Paul, Minnesota, created a rebuttal presumption that the petition reached the Court in the ordinary course of the mail which, in this case, would have been no later than December 5, 1962. Thus, the presumption was not rebutted by defendant's proof of the Court's date stamp on the envelope indicating receipt of the petition in the mail on December 7, 1962, one (1) day late.

In *Charlson*, the Court had testimony before it that the normal time for transportation of first-class mail from St. Paul to Washington, according to an official of the Post Office Department, was two (2) days for first-class mail and one (1) day longer for fourth-class mail. The Court found that plaintiff's petition should have arrived at its destination no later than December 3, and, therefore, should have been docketed before the close of business December 6.

The facts of this case do not support such a holding as found in *Charlson*. The facts are quite the opposite of those in *Charlson*. In this case, plaintiff has presented no evidence from anyone with expertise in postal delivery standards. Defendant, on the other hand, has produced an exhaustive affidavit consisting of technical information showing that there was less than a 50 percent chance, whether by metered or stamped mail, that the complaint would reach the Court within the necessary time. Defendant has shown that certified mail normally takes three (3) days to reach its destination.

*Charlson* set forth the standard now embodied in Rule 3(b)(2) which relaxed an earlier strict standard by the creation of the rebuttable presumption found in Rule 3(b)(2)(C). Defendant has clearly rebutted any presumption that the complaint was deposited in the mail sufficiently in advance of July 29, 1988, the date upon which the statute of limitations ran.

---

**2.** The Court is unable to determine from the submissions whether plaintiff used metered mail or stamped mail.

The Court is not unmindful of the harsh result in this instance. Nevertheless, the words of Judge Oscar Davis in his *Charlson* dissent are instructive:

> Of course, there is often a feeling of discomfort when a party thus fails to obtain a ruling on the merits. But a court's power to ease the effects of a limitations period established by Congress for suits against the sovereign is relatively narrow. *See Soriano v. United States,* 352 U.S. 270 [77 S.Ct. 269, 1 L.Ed.2d 306] (1957). Time-bars for tax refunds "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble,* 332 U.S. 535, 539 [68 S.Ct. 235, 237, 92 L.Ed. 150] (1947); see *Rosenman v. United States,* 323 U.S. 658, 661 [65 S.Ct. 536, 537, 89 L.Ed. 535] (1945); *Tolerton & Warfield Co. v. United States,* 152 Ct. Cl. 402, 404, 406, 285 F.2d 124, 125, 126 (1961); *Melchior v. United States,* 136 Ct. Cl. 483, 145 F.Supp. 193, 194 (1956). The Supreme Court "has consistently ruled that no federal judge or court possesses the power to extend the time for appeal beyond the statutory period by any form of judicial action...." *Hill v. Hawes,* 320 U.S. 520, 525 [64 S.Ct. 334, 336, 88 L.Ed. 283] (1944) (Stone, C.J., dissenting). Though we might, if we were legislators, prefer to change some of the existing statutory requirements, we cannot as judges absolve a petitioner from the consequences of his failure to pursue his existing remedies in a timely manner. See *Evans v. Jones, supra,* 366 F.2d [772] at 773 [ (4th Cir.1966) ]; *Chambers v. Lucas,* 41 F.2d 299 (C.A.D.C., 1930).

*Charlson,* 181 Ct. Cl. at 297, 298, 384 F.2d 434.

Rule 12(h)(3) RUSCC provides:

> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

Upon representations made by plaintiff in his motion, July 29, 1988, was the last date allowed by the statute of limitations for filing the complaint. The complaint was filed on August 1, 1988, clearly outside the limitations period. No motion to dismiss has been filed by the Government. Nevertheless, even if the parties remain silent (in this instance, the Government cited the Court to Rule 12(h)(3) in its opposing brief), a trial court " * * * is obliged to notice on its own motion the want of its own jurisdiction * * *." *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988); quoting 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3522 at 69–70 (2d ed. 1984).

The Court, *sua sponte* and pursuant to Rule 12(h)(3) RUSCC, must, therefore, direct the Clerk to dismiss the action for lack of subject matter jurisdiction.

Accordingly, plaintiff's motion to change the date of filing is denied and the Clerk is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.

## APPENDIX A

### AFFIDAVIT OF BRYAN A. BAILEY

Bryan A. Bailey, being duly sworn, deposes and states as follows

1. I am currently employed as the Manager of the Service Statistics Branch of the United States Postal Service (USPS).

2. The Service Statistics Branch of the USPS is responsible for compiling statistics regarding the time required for mail delivery within the postal system.

3. Those statistics, which separately report data for metered and stamped mail, report the percentage of letters mailed from a particular city actually delivered in another city within a specified number of days.

4. Attachment 1 is an excerpt from a report summarizing the statistics for metered mail delivery for the period from July 2 through July 29, 1988, relating to service between Los Angeles, California, and Washington, D.C.

5. According to the statistics reported in Attachment 1, 7 percent of the letters mailed from Los Angeles, California, are

delivered in Washington, D.C. within two days, and 88 percent of such letters are delivered within three days.

6. Attachment 2 is an excerpt from a report summarizing the statistics for stamped mail delivery for the period from July 2 through July 29, 1988, relating to service between Los Angeles, California, and Washington, D.C.

7. According to the statistics reported in Attachment 2, 45 percent of the letters mailed from Los Angeles, California, are delivered in Washington, D.C., within two days, and 86 percent of such letters are delivered within three days.

8. Use of certified mail would serve only to increase the time required for delivery, typically by approximately one day.

9. The USPS has established a delivery standard of three days (excluding Sundays and holidays) for first class letters mailed from Los Angeles, California, to Washington, D.C.

10. USPS delivery standards represent goals established by the USPS for mail delivery, based upon handling, transportation, and delivery requirements, which represent the USPS's goal for ordinary delivery of mail.

11. USPS delivery standards are a matter of public record and are readily available to the public.

12. Attachments 1 and 2 are copies made by Jack Siegel in the course of his duties as an employee in the Service Statistics Branch from reports printed on microfiche.

13. These statistics represent factual findings developed in the course of investigations regarding postal service made pursuant to lawful authority.

14. The statistics are based on raw data regularly recorded by USPS employees in the ordinary course of their employment duties.

15. I have read the foregoing statement and have determined that the information contained herein is true and correct to the best of my knowledge, information, and belief.

/s/ Bryan A. Bailey
BRYAN A. BAILEY

Sworn to and subscribed before me this 19th day of September, 1988.

(Signature)

Notary Public

My commission expires July 31, 1990

# ATTACHMENT 1

USPS HQ TO 4760  
NISDA RALEIGH  
REPORT NUMBER...  

REPORTS 207-M

**ORIGIN - DESTINATION INFORMATION SYSTEM**

D08

FIRST CLASS MAIL SERVICE STANDARD ACHIEVEMENT  
SECTIONAL CENTER AREA REPORT  
DESTINATION FROM ORIGIN

METERED MAIL

APRIL FY 88

DATE 08/1  
PAGE 17

SCF AREA OF DESTINATION 202 ID CITY    WASHINGTON OFFICIAL    FROM 07-02-88 TO 07-29-88

| SCF AREAS/ADCS OF ORIGIN | AVERAGE DAILY VOLUME | KNOWN DELIVERY DAYS | % DELIVERED IN DAYS 1 | 2 | 3 | 4 | 5 | VOLUME DELIVERED WITHIN STANDARD | FAILED VOLUME (PCS) | % OF FAILED VOLUME |
|---|---|---|---|---|---|---|---|---|---|---|
| **THREE DAY STANDARD** | | | | | | | | | | |
| **THREE DAY AREAS** | | | | | | | | | | |
| 752 IDC DALLAS TX | 1,101 | 1,038 | 3 | 61 | 85 | 100 | 100 | 882 | 156 | 4.79 |
| 800 IDC DENVER CO | 2,645 | 2,645 | | 51 | 77 | 98 | 9 | 2,036 | 609 | 18.70 |
| 900 IDC LOS ANGELES CA | 1,121 | 1,090 | | 7 | 88 | 94 | 99 | 959 | 131 | 4.02 |
| 940 SCF SAN FRANCISCO CA | 1,531 | 1,500 | | 33 | 88 | 65 | 99 | 1,320 | 180 | 5.53 |
| 1A1 SCF SAN JUAN, PR | 47 | 47 | | | | 100 | 100 | | 47 | 1.44 |
| 3A2 ADC MACON, GA | 74 | 74 | 50 | 75 | 100 | 100 | 100 | | 74 | 2.27 |
| 3B1 ADC JACKSONVILLE, FL | 251 | 251 | | 46 | 79 | 83 | 100 | 251 | | |
| 3C1 ADC BIRMINGHAM, AL | 488 | 414 | | 30 | 100 | 100 | 100 | 327 | 87 | 2.67 |
| 3D1 ADC NASHVILLE, TN | 105 | 105 | | 54 | 77 | 94 | 99 | 105 | | |
| 3D2 ADC MEMPHIS, TN | 137 | 137 | | 23 | 94 | 94 | 94 | 105 | 32 | .98 |
| 3F1 ADC NEW ORLEANS, LA | 520 | 520 | | | | | | 488 | 32 | .98 |
| 3E1 ADC JACKSON, MS | 63 | 63 | | 13 | 39 | 39 | 39 | | 63 | 1.93 |
| 4B2 ADC GRAND RAPIDS, MI | 121 | 121 | | 13 | 81 | 100 | 100 | 47 | 74 | 2.27 |
| 4C1 ADC DES MOINES, IA | 682 | 556 | | 36 | 95 | 95 | 95 | 450 | 106 | 3.25 |
| 4D1 ADC MILWAUKEE, WI | 1,191 | 1,191 | 57 | 57 | 100 | 100 | 100 | 1,131 | 60 | 1.84 |
| 4E1 ADC SAINT PAUL, MN | 880 | 880 | | 17 | 35 | 93 | 93 | 880 | | |
| 4E2 ADC MINNEAPOLIS, MN | 986 | 986 | | | | | | 345 | 641 | 19.68 |
| 4G1 ADC FARGO, ND | 74 | 74 | | 100 | 100 | 100 | 100 | 74 | | |
| 5A1 ADC BILLINGS, MT | 31 | 31 | | 100 | 100 | 100 | 100 | 31 | | |
| 4H1 ADC NORTH SUBURBAN, IL | 31 | 31 | | 99 | 99 | 99 | 99 | 31 | | |
| 4H2 ADC SOUTH SUBURBAN, IL | 126 | 126 | | 75 | 99 | 99 | 99 | 124 | 2 | .06 |
| 4J1 ADC SAINT LOUIS, MO | 31 | 31 | | 100 | 100 | 100 | 100 | 31 | | |
| 4J2 ADC KANSAS CITY, MO | 357 | 357 | | 44 | 82 | 82 | 82 | 292 | 65 | 2.00 |
| 4K1 ADC WICHITA, KS | 31 | 31 | | 100 | 100 | 100 | 100 | 31 | | |
| 4L1 ADC OMAHA, NE | 419 | 419 | 7 | 25 | 100 | 100 | 100 | 419 | | |
| 3F2 ADC SHREVEPORT, LA | 31 | 31 | | 100 | 100 | 100 | 100 | 31 | | |
| 3G1 ADC LITTLE ROCK, AR | 157 | 157 | | 20 | 100 | 100 | 100 | 157 | | |
| 3H1 ADC OKLAHOMA CITY, OK | 157 | 157 | | 80 | 100 | 100 | 100 | 157 | | |
| 3H2 ADC TULSA, OK | 242 | 242 | | 43 | 100 | 100 | 100 | 242 | | |
| 3J2 ADC FORT WORTH, TX | 388 | 388 | | 60 | 92 | 96 | 96 | 356 | 32 | .98 |
| 3J3 ADC HOUSTON, TX | 31 | 31 | | 100 | 100 | 100 | 100 | 31 | | |
| 3J4 ADC SAN ANTONIO, TX | 126 | 126 | | 25 | 75 | 75 | 75 | 94 | 32 | .98 |
| 5E1 ADC ALBUQUERQUE, NM | 346 | 346 | | 36 | 73 | 82 | 82 | 252 | 94 | 2.89 |
| 4M1 ADC DENVER, CO | 168 | 168 | | 38 | 100 | 100 | 100 | 168 | | |
| 4N1 ADC CHEYENNE, WY | 16 | 16 | | | | | | | 16 | .49 |
| 5B1 ADC BOISE, ID | 63 | 63 | | 49 | 98 | 98 | 98 | 61 | 2 | .06 |
| 5C1 ADC SALT LAKE CITY, UT | 152 | 152 | | 68 | 80 | 80 | 100 | 121 | 31 | .95 |
| 5D1 ADC PHOENIX, AZ | 861 | 830 | | 24 | 68 | 89 | 96 | 564 | 266 | 8.17 |

ATTACHMENT 2

ORIGIN-DESTINATION INFORMATION SYSTEM

e2022CF
USPS HQ 10-4760
NISDC - RALEIGH
REPORT HSB633P1          .R07

2C-20066

FIRST CLASS MAIL SERVICE STANDARD ACHIEVEMENT
SECTIONAL CENTER AREA REPORT
DESTINATION FROM ORIGIN

STAMPED MAIL

REPORTS 207-5

AP 11 FY 88

SCF AREA OF DESTINATION 202 ID CITY    WASHINGTON OFFICIAL

FROM 07-02-88 TO 07-29-88

SCF AREAS/ADCS OF ORIGIN

| | | | AVERAGE DAILY VOLUME | KNOWN DELIVERY DAYS | % DELIVERED IN DAYS | | | | | VOLUME DELIVERED WITHIN STANDARD | FAILED VOLUME (PCS) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 1 | 2 | 3 | 4 | 5 | | |
| THREE DAY STANDARD | | | | | | | | | | | |
| THREE DAY AREAS | | | | | | | | | | | |
| 5G1 | LOS ANGELES, CA | ** | 725 | 725 | 9 | 45 | 86 | 96 | 100 | 623 | 102 |
| 5G2 | ADC LAX-A, CA | | 2,587 | 2,439 | 9 | 44 | 96 | 96 | 100 | 2,341 | 98 |
| 5G3 | ADC LAX-B, CA | | 1,689 | 1,584 | 5 | 23 | 93 | 100 | 100 | 1,473 | 111 |
| 5G5 | ADC SAN FRANCISCO, CA | | 1,363 | 1,363 | | 16 | 71 | 83 | 94 | 967 | 396 |
| 5G4 | ADC SFO, CA | ** | 857 | 826 | 9 | 51 | 100 | 100 | 100 | 826 | |
| 5J1 | ADC PORTLAND, OR | | 1,686 | 1,234 | 6 | 30 | 92 | 95 | 95 | 1,135 | 99 |
| 5K1 | ADC SEATTLE, WA | ** | 452 | 452 | | 60 | 93 | 100 | 100 | 420 | 32 |
| 5K2 | ADC SEA-TAC, WA | ** | 347 | 347 | | 36 | 100 | 100 | 100 | 347 | |
| SUBTOTAL THREE DAY AREAS | | | 48,101 | 45,694 | 21 | 48 | 88 | 98 | 99 | 40,089 | 5,603 |
| TOTAL THREE DAY STANDARD | | | 52,793 | 48,543 | 23 | 49 | 88 | 98 | 99 | 42,737 | 5,802 |
| TOTAL | | | 173,323 | 167,042 | 54 | 78 | 95 | 99 | 100 | 146,675 | 20,364 |