**Marjorie A. HALL, Executrix of the Estate of William G. Hall,**

v.

**UNITED STATES of America.**

No. 3–90–0716.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 22, 1992.

**464**

Sullivan F. Marsden, Mark Harrington Westlake, Westlake & Marsden, Nashville, TN, for plaintiff.

Carl Q. Carter, Dept. of Justice, Michael J. Martineau, Washington, DC, for defendant.

## *MEMORANDUM*

HIGGINS, District Judge.

The Court has before it the Report and Recommendation of the Magistrate Judge (entered December 17, 1991; Docket Entry No. 30), defendant's objections to the Report and Recommendation (filed January 3, 1992; Docket Entry No. 31), and other pleadings and memoranda concerning the Report and Recommendation.[1] In his Report and Recommendation, the Magistrate Judge recommended that the plaintiff's motion for partial summary judgment (filed February 8, 1991; Docket Entry No. 11) be granted because the defendant had not responded to that motion in accordance with Local Rule of Court 8(b)(3). For the reasons set forth below, the Court adopts in part and rejects in part the Report and Recommendation of the Magistrate Judge. The defendant's objections are sustained and the plaintiff's objections to the defendant's objections are overruled. Therefore, the plaintiff's motion for partial summary judgment shall be denied, and the defendant's motion for leave to file its cross-motion for summary judgment shall be granted.

## I. FACTS AND PROCEDURAL HISTORY.

This is a tax refund case brought by the Estate of William G. Hall, pursuant to 26 U.S.C. § 7422(a), in which the Estate seeks a refund of estate taxes in the amount of $101,027.00 paid to the Internal Revenue Service. Jurisdiction is based on 28 U.S.C. § 1346(a).

---

1. Defendant's motion for leave to file a cross-motion for summary judgment, together with a memorandum in opposition to plaintiff's motion for partial summary judgment (filed January 6, 1992; Docket Entry No. 32); declaration by Michael J. Martineau (filed January 6, 1992; Docket Entry No. 33); plaintiff's objections to defendant's objections to the Report and Recommendation, together with a supporting brief (filed March 20, 1992; Docket Entry Nos. 39 and 40) and supplement (filed April 3, 1992; Docket Entry No. 45); defendant's reply to plaintiff's second motion for partial summary judgment (filed April 3, 1992; Docket Entry No. 44); defendant's reply to plaintiff's objections to defendant's objections (filed April 6, 1992; Docket Entry No. 46); and second declaration by Michael J. Martineau (filed April 6, 1992; Docket Entry No. 47).

The decedent, William Gordon Hall, prepared and executed his "Last Will and Testament" on May 26, 1978. Mr. Hall died on April 28, 1983. The will was filed in Probate Court for Davidson County, Tennessee, and an "Order of Probate" was issued on May 9, 1983.

The Estate timely filed a federal estate tax return and paid the estate tax on January 27, 1984, but only claimed a limited marital deduction.[2] The Estate subsequently filed with the IRS two administrative claims for a refund, asserting that the Estate was entitled to claim an unlimited marital deduction due to a change in the federal estate tax laws.

Mr. Hall's will made two bequests, each to a trust. The first bequest, to the "Marital Trust" for the benefit of Mrs. Hall, depended on a formula. The will distributed to the Marital Trust an amount equal to the maximum allowable marital deduction under federal estate tax law, reduced by whatever amount might be needed to make full use of available tax credits. To the second trust, the "Family Trust" for the benefit of Mr. Hall's children, the will left the rest of the estate.

When Mr. Hall executed his will in 1978, the maximum marital deduction, which determined the amount to be distributed to the Marital Trust, was limited to the greater of $250,000 or 50 percent of the value of the adjusted gross estate. However, prior to Mr. Hall's death, Congress passed the Economic Recovery Tax Act of 1981, which amended the estate tax laws to allow an unlimited marital deduction. Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 403(a)(1)(A), 95 Stat. 172, *et seq.* (amending 26 U.S.C. § 2056). Thus, the dispute in this case concerns whether the Marital Trust should receive the smaller amount it would have received under the limited marital deduction in effect when Mr. Hall executed his will, or whether it should receive a larger amount pursuant to the unlimited marital deduction created by ERTA. If the Marital Trust receives a larger amount, the Estate may claim a larger marital deduction, and it

would be entitled to the tax refund it claims in this suit.

In enacting ERTA, Congress was aware that many wills, like Mr. Hall's, employed language which directly tied spousal bequests to the maximum marital deduction allowed by the federal estate tax laws. *See* H.R.Rept. No. 201, 97th Cong., 1st Sess. at 163–64 (1981). Congress was concerned that the increase in the allowable marital deduction proposed by ERTA might cause spousal bequests to become much larger than intended by testators. Congress' solution was to include in ERTA a transitional rule, § 403(e)(3), which continued the limited marital deduction for testators such as Mr. Hall who executed their wills under the old law, but died after the new law came into effect.

To accommodate testators who may have wished to make a larger marital bequest if the allowable marital deduction was ever increased, ERTA § 403(e)(3) provided two exceptions under which the unlimited deduction would apply to existing wills. The first exception, § 403(e)(3)(C), required testators to physically amend their wills to refer specifically to an unlimited marital deduction. The second exception, § 403(e)(3)(D), provided that if a state enacted a statute construing this type of marital bequest as referring to an unlimited deduction, then the transitional rule would not apply. The transitional rule of ERTA, § 403(e)(3), reads as follows:

(3) If—

(A) the decedent dies after December 31, 1981,

(B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act [*i.e.*, August 13, 1981], or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,

(C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited deduction at any time

---

**2.** The marital deduction, 26 U.S.C. § 2056, allows an estate to deduct the value of bequests to a surviving spouse or, as in this case, to a trust for the spouse's benefit.

after the date which is 30 days after the date of enactment of this Act [*i.e.*, August 13, 1981], and before the death of the decedent, and

(D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by subsection (a),

then the amendment made by subsection (a) shall not apply to the estate of such decedent.

Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 403(e)(3), 95 Stat. 172, 305 (1981).

When Mr. Hall died, in 1983, he had not amended his will, pursuant to ERTA § 403(e)(3)(C), to refer to an unlimited marital deduction.

On October 15, 1984, the Estate filed its first administrative claim with the IRS. This claim asserted that the will's bequest to the Marital Trust was not a formula of the type covered by § 403(e)(3)(B).[3] Therefore, the Estate argued, it was entitled to claim an unlimited marital deduction under the federal estate tax laws as amended by ERTA, and the IRS should grant it a refund of the taxes it overpaid when it only claimed a limited marital deduction.

On December 4, 1986, the IRS proposed partial disallowance of this first administrative claim. On January 26, 1987, the Estate filed a form 2297, "Waiver of Statutory Notification of Claim Disallowance," with respect to this claim.

Also on January 26, 1987, the Estate filed a second administrative claim with the IRS,

which the Estate described therein as a "protective claim."[4] Unlike the first claim, which had been based on ERTA § 403(e)(3)(B), this second claim was based on ERTA § 403(e)(3)(D). It asserted that the Estate could rely on any statutory enactment of the Tennessee Legislature construing the marital bequest to refer to an unlimited marital deduction. Only two weeks earlier, on January 13, 1987, such a bill had been introduced into the Tennessee Legislature. The Legislature subsequently passed the bill, which became effective on July 1, 1987.[5]

On August 10, 1988, the IRS proposed disallowance of the second administrative claim, and on September 2, 1988, the Estate filed a "Waiver of Statutory Notification of Claim Disallowance" with respect to this claim.

On August 10, 1990, more than two years after the Estate filed its waiver of notification with respect to the first administrative claim, but within two years of filing the waiver of notification on the second claim, the Estate filed this suit against the United States of America. The plaintiff's complaint (filed August 8, 1990; Docket Entry No. 1) asserts as grounds for relief the two theories asserted to the IRS in the first and second administrative claims.

The defendant then filed a motion to dismiss on November 20, 1990 (Docket Entry No. 5). This motion asserted that the suit was time-barred because the plaintiff had not filed its complaint within two years of filing the waiver of notification on the first administrative claim in accordance with 26 U.S.C. § 6532(a)(3).[6] The Court ordered that the

---

**3.** There has been much confusion in this case whether this claim was brought under § 403(e)(3)(B) or § 403(c)(3)(C). *See* Memorandum of the Court at 3 n. 2 (entered November 25, 1991; Docket Entry No. 27). As demonstrated below, the Court has determined that the claim was brought under § 403(c)(3)(B).

**4.** The purpose of filing a "protective claim" is to ensure that the claim is filed within three years from the time the return was filed, as required by 26 U.S.C. § 6511, even though the grounds for the claim, such as the legislation being considered by the Tennessee Legislature in this case, may not be fully materialized when the protective claim is filed.

**5.** *See* Tenn.Code Ann. § 32–3–108(a)(5) (Supp. 1991).

**6.** 26 U.S.C. § 6532(a) provides in pertinent part:

(a) Suits by taxpayers for refund.—

(1) General rule.—No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax ... shall be begun ... after the expiration of 2 years from the date of mailing ... by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

.     .     .     .     .

(3) Waiver of notice of disallowance.—If any person files a written waiver of the require-

motion be referred to the Magistrate Judge. Order (entered January 3, 1991; Docket Entry No. 9).

Before the Magistrate Judge issued his Report and Recommendation on the motion to dismiss, however, the plaintiff filed a motion for partial summary judgment (filed February 8, 1991; Docket Entry No. 11). This motion was based only on the theory asserted in the first administrative claim, that the spousal bequest was not of the type described in ERTA § 403(e)(3)(B). The Court ordered that this motion also be referred to the Magistrate Judge. Order (entered March 13, 1991; Docket Entry No. 16).

On March 22, 1991, the first Report and Recommendation of the Magistrate Judge was entered (Docket Entry No. 17), recommending that the defendant's motion to dismiss be granted. Relying on *Huettl v. United States*, 675 F.2d 239 (9th Cir.1982), the Magistrate Judge concluded that the two administrative claims were identical for purposes of determining when the statute of limitations began to run. Therefore, the Magistrate Judge determined that, under 26 U.S.C. § 6532(a)(3), the two-year statute of limitations had commenced when the Estate filed its "Waiver of Statutory Notification of Claim Disallowance" with respect to the first administrative claim, in January 1987. Because the plaintiff filed this suit in August 1990, the Magistrate Judge recommended that the defendant's motion to dismiss be granted.

The Court rejected the Magistrate Judge's Report and Recommendation. In the memorandum accompanying its order (entered November 25, 1991; Docket Entry No. 27), the Court distinguished this case from *Huettl*, and determined that the two administrative claims filed by the Estate were not identical for purposes of determining when the statute of limitations began to run. The Court concluded that because the suit was filed within two years of the Estate's filing its "Waiver of Statutory Notification of Claim Disallowance" for the second administrative claim, the suit was not time-barred. However, the Court's order and memorandum did not address whether both the first and second claims, or only the second claim, survived the statute of limitations. The Court then referred the case back to the Magistrate Judge to consider whether the plaintiff's still-undecided motion for partial summary judgment, which was based exclusively on the first claim, should be granted.

In a second Report and Recommendation (entered December 17, 1991; Docket Entry No. 30), the Magistrate Judge recommended that the plaintiff's motion for partial summary judgment be granted. The Magistrate Judge determined that, because the defendant had not responded to the motion, it should be treated as unopposed, in accordance with Local Rule of Court 8(b)(3). Therefore, the Magistrate Judge recommended that summary judgment in the amount of $101,027.00 plus interest be entered for the plaintiff.

Then, in a flurry of papers, beginning with the defendant's objections to the Report and Recommendation, the defendant asserted that the Court should reject the Magistrate Judge's recommendation that summary judgment be entered for the plaintiff.

The Court will now discuss why it has decided to adopt in part and reject in part the Report and Recommendation of the Magistrate Judge and to deny the plaintiff's motion for partial summary judgment.

## II. DISCUSSION.

The defendant has made two arguments why the Court should reject the Magistrate Judge's Report and Recommendation. First, the defendant has offered a number of excuses for its failure to respond to the plaintiff's motion for partial summary judgment. Second, the defendant has asserted that the Court lacks subject matter jurisdiction to decide the claim which is the basis for the plaintiff's motion. The Court finds that the first argument is wholly unpersuasive. The second is dispositive.

### A. *Defendant's Failure to Respond to Motion*

Local Rule of Court 8(b)(3) provides:

ment that he be mailed a notice of disallowance, the 2–year period prescribed in paragraph (1) shall begin on the date such waiver is filed.

Each party opposing a motion shall serve and file a response, reply memorandum, affidavits or other responsive material not later than ten (10) days after service of the motion, except that in cases of motion for summary judgment the time shall be twenty (20) days after service of the motion. Failure to file a response shall indicate that there is no opposition to the motion.

■ Although the defendant did not respond to the plaintiff's motion for partial summary judgment until eleven months after it was filed, the defendant has asserted three reasons why the Court should not adopt the Magistrate Judge's Report and Recommendation that the motion is unopposed. *See* defendant's objections to Report and Recommendation at 4–5 (filed January 3, 1992; Docket Entry No. 31).

First, the defendant asserts that it believed consideration of the plaintiff's motion was stayed while the Magistrate Judge considered the defendant's motion to dismiss and that the defendant expected the Magistrate Judge to set a briefing schedule for responding to the plaintiff's motion. However, the Court finds that consideration of the plaintiff's motion was not stayed, and the Magistrate Judge did not set a briefing schedule.

Second, the defendant asserts that its counsel needed time to consult with IRS offices in Nashville, Tennessee, and Washington, D.C., and that it intended to respond to the plaintiff's motion after receiving advice from the IRS. The defendant's intentions notwithstanding, the defendant did not respond to the plaintiff's motion within the required time. The defendant could have requested from the Court an extension of time in order to consult with the IRS, but it did not do so.

Third, the defendant asserts that it telephonically advised counsel for the plaintiff that it intended to respond to the plaintiff's motion. The Court here notes that personal responses to the opposing party are an inadequate means of responding to a motion under Local Rule of Court 8(b)(3), which requires that responses to motions be filed with the Court.

Because the defendant did not respond to the plaintiff's motion for partial summary judgment in accordance with Local Rule of Court 8(b)(3), the Court adopts the Magistrate Judge's Report and Recommendation to the extent that it found the plaintiff's motion was unopposed.

### B. *Subject Matter Jurisdiction*

■ The Court is mindful of the fact that the applicable statute of limitations in this case, 26 U.S.C. § 6532(a), is jurisdictional. *See First Alabama Bank, N.A. v. United States,* 768 F.Supp. 1522, 1524 (S.D.Ala.1991). Because this is a suit against the United States, the doctrine of sovereign immunity applies, and the suit must fit clearly within the terms of the statute by which the United States has consented to be sued. *United States v. Michel,* 282 U.S. 656, 658–60, 51 S.Ct. 284, 250, 75 L.Ed. 598, 602 (1931).

A suit by a taxpayer for a refund is not an exception to this rule. *Id.* The United States has only consented to such suits according to the terms specified by Congress, including the applicable statutes of limitations. *Id.* Moreover, courts must give "regard to the rule of strict construction to be applied to waivers by the United States of its sovereign immunity from suit." *Id.*

■ In a suit for refund of taxes against the United States, the burden of proving that the claim fits within the applicable statute of limitations falls squarely on the plaintiff. *Bell v. Gray,* 191 F.Supp. 328, 329 (E.D.Ky.), *aff'd,* 287 F.2d 410 (6th Cir.1960). The United States need not plead the statute of limitations as a defense. *Id.*

With the foregoing in mind, the Court must determine whether the claim asserted by the plaintiff in its motion for partial summary judgment was brought within the applicable statute of limitations. If the claim was not filed within the limitations period, the Court must deny the plaintiff's motion and dismiss the claim on which it is based for lack of subject matter jurisdiction.

The applicable statute of limitations for recovery of taxes by a taxpayer is set forth in 26 U.S.C. § 6532(a). Generally, a suit in the District Court shall be brought within "2 years from the date of mailing ... by the

Secretary [of the Treasury] to the taxpayer of a notice of disallowance of the part of the claim to which the suit ... relates." 26 U.S.C. § 6532(a)(1). However, if the taxpayer files a written waiver of the requirement that he be mailed notice of disallowance, "the 2–year period ... shall begin on the date such waiver is filed." 26 U.S.C. § 6532(a)(3).

In this case, the Estate filed two waivers of notification. It filed the first waiver in January 1987, after the IRS proposed disallowance of the Estate's first administrative claim. It filed the second waiver in September 1988, after the IRS proposed disallowance of the Estate's second administrative claim. After the plaintiff brought this suit based on both claims, in August 1990, the defendant moved to dismiss the suit on the ground that the plaintiff had commenced it more than two years after filing the first waiver.

In the memorandum accompanying the order in which the Court rejected the Magistrate Judge's recommendation that the motion to dismiss be granted, the Court reviewed the relevant authorities. *See* Memorandum at 7–12. The Court concluded that where a taxpayer, such as the plaintiff, had filed consecutive administrative claims for a refund with the IRS, the time in which he could bring suit in the District Court on those claims depended on whether the second claim was " 'a mere repetition of the first claim.' " *Id.* at 8 (quoting *Charlson Realty Co. v. United States,* 384 F.2d 434, 439 (Ct. Cl.1967). If the second claim was identical to the first claim, the taxpayer had to commence his suit within two years of filing a waiver of notification on the first claim. However, if the second claim was different from the first, then the taxpayer had two years, from the time he filed a waiver of notification on the second claim, to commence his suit.

In its memorandum, the Court determined that the plaintiff's second claim was different from its first. Reviewing the facts of the case, the Court observed that the Estate's first claim, was based on ERTA § 403(e)(3)(B). That claim looked exclusively

at the language of the will and asserted that the bequest to the Marital Trust was not of the type covered by the ERTA transitional rule. The second claim, however, was based on ERTA § 403(e)(3)(D). This claim looked to the laws of Tennessee for any statute enacted to construe marital bequests affected by ERTA. The Court determined that because Tennessee had enacted Tenn.Code. Ann. § 32–3–108(a)(5) after the Estate filed its first administrative claim with the IRS, and because enactment of that statute was itself occasioned by ERTA, the second claim was indeed different from the first. The Court stated: "In this case, ... the Estate's second claim is not identical to, or a mere repetition of, its first claim, as it asserts a different legal theory, and focuses on different facts." Memorandum at 11 (citing *Charlson Realty Co.,* 384 F.2d at 440). Therefore, the Court concluded that this suit was not time-barred.

■ Neither the Court nor any of the cases it reviewed in its memorandum, however, have addressed the question of whether both claims, or only the second claim, survived the statute of limitations. This question appears to be one of first impression.

Nevertheless, the Court has already determined, in its previous memorandum, that the plaintiff's two claims were different for purposes of the statute of limitations. At that point in the litigation, the plaintiff argued convincingly that the Court should distinguish the two claims and therefore not dismiss the entire suit. Now, the plaintiff argues that the Court should treat its first claim as though it was indistinguishable from the second, in the hope that the first claim will not be dismissed. The plaintiff cannot have it both ways. The Court has already determined that the two claims were different, and it will continue to treat them as such.

This motion for partial summary judgment is based exclusively on the plaintiff's first administrative claim, that the marital bequest in the will is not of the type covered by § 403(e)(3)(B).[7] The Estate filed a "Waiver

---

**7.** The plaintiff subsequently filed with the Court a second motion for partial summary judgment

(filed March 20, 1992; Docket Entry No. 41), which is based on the plaintiff's second adminis-

of Statutory Notification of Claim Disallowance" on this first claim on January 26, 1987. It brought this suit on August 10, 1990.

Title 26 U.S.C. § 6532(a)(3) states that "[i]f a person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2–year period [of limitations] shall begin on the date such waiver was filed." The plaintiff commenced this suit more than two years after filing its waiver of notification on the first claim. Therefore, the Court does not have jurisdiction to decide that claim.

Perhaps recognizing the inconsistency of its position, the plaintiff also has argued that the policy of judicial economy would be better served if the Court were to hear both of its claims in this suit. The plaintiff argues that hearing both claims would encourage taxpayers to consolidate similar claims and prevent piecemeal litigation. Plaintiff's Brief at 8–10. These arguments, meritorious or not, are irrelevant. As the United States Supreme Court has stated:

> [T]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.... Like a waiver of immunity itself, which must be unequivocally expressed, this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.

*Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548, 553–54 (1981) (citations and quotations omitted).

Because the plaintiff commenced this suit more than two years after filing its "Waiver of Statutory Notification of Claim Disallowance" with respect to its first administrative claim, this Court lacks jurisdiction, under 26 U.S.C. § 6532(a)(3), to decide any part of this suit arising out of that claim.

trative claim, that Tenn.Code Ann. § 32–3–108(a)(5) has validly construed the bequest to the Marital Trust to refer to an unlimited marital

## III.  CONCLUSION.

For the foregoing reasons, the Court adopts in part, and rejects in part, the Magistrate Judge's December 17, 1991, Report and Recommendation. The defendant's objections are sustained and the plaintiff's objections to the defendant's objections are overruled. The Court therefore denies the plaintiff's motion for summary judgment and dismisses that part of the plaintiff's suit which is based on ERTA § 403(e)(3)(B). The Court also grants the defendant's motion for leave to file its cross-motion for summary judgment.

deduction. The Court has not yet ruled on that motion.